[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 28, 2004
THOMAS  K. KAHN
CLERK

_____

No. 03-16094
Non-Argument Calendar

_____

D. C. Docket No. 03-00234-CV-ORL-22-KRS

DIRECTV, INC.,
a California corporation,

Plaintiff-Appellant,

versus

MICHAEL BROWN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 28, 2004)**

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

This case presents an issue of first impression for this Court that has created

a split among the circuits: whether an award of liquidated damages, under 18

U.S.C. section 2520(c)(2), for a violation of the Electronic Communications Privacy Act of 1986 (Wiretap Act) is mandatory or discretionary. DIRECTV, Inc. (DTV) obtained a permanent injunction against Michael Brown and a judgment of $3,886.64 of actual damages, under 47 U.S.C. section 605, plus attorney's fees and costs, but the district court refused to award DTV liquidated damages of $10,000 under section 2520(c)(2) of the Wiretap Act. DTV appeals and contends that an award of liquidated damages under section 2520(c)(2) is mandatory and, alternatively, the district court abused its discretion in declining to award liquidated damages under section 2520(c)(2). We affirm the district court and, along with three out of four of our sister circuits, hold that a district court has the discretion not to award liquidated damages under section 2520(c)(2).

## I. FACTS AND PROCEDURAL HISTORY

DTV is a California company that provides satellite television programming to millions of customers. To prevent unauthorized viewing of its pay-per-view and premium programming, DTV uses conditional access technology that encrypts or scrambles its satellite transmissions. For a fee, DTV provides its customers access cards to decrypt or unscramble these satellite transmissions. Other companies illegally market "pirate access devices" to circumvent this conditional access technology and allow users to receive the satellite transmissions provided by DTV

2

without paying DTV any fees.  Michael Brown bought and used one of these pirate access devices.

DTV sued Brown and others who obtained pirate access devices through Fulfillment Plus, a mailing facility located in California.  The complaint alleged that Brown violated 47 U.S.C. section 605(a) by receiving or assisting others in receiving the programming of DTV without authorization and violated 18 U.S.C. section 2511(1)(a),which provides a civil remedy against anyone who "intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  After Brown failed to appear, the clerk entered default.  The district court later granted DTV a default judgment against Brown.  Following a hearing, the district court entered a permanent injunction against Brown and awarded DTV $3886.64 in actual damages for Brown's violation of 47 U.S.C. section 605(a), plus attorney's fees of $752.50 and costs of $195.  The district court, however, declined to award DTV liquidated damages under section 2520(c)(2) of the Wiretap Act.

## II. DISCUSSION

DTV contends that an award of damages under section 2520(c)(2) is mandatory, and DTV alternatively argues that the district court abused its discretion by not awarding damages under section 2520(c)(2) based on Brown's

3

violation of the Wiretap Act.  We address each of these arguments following a brief explanation of the standard of review.

## A.  Standard of Review

DTV has stated correctly the standards of review in this appeal.  The issue whether liquidated damages under section 2520(c)(2) are mandatory is purely a matter of statutory interpretation subject to de novo review.  United States v. Veal, 153 F.3d 1233, 1245 (11th Cir. 1998), cert. denied, 526 U.S. 1147 (1999).  If this Court concludes that liquidated damages are not mandatory and then reaches the alternative argument that damages should have been awarded, the review is for abuse of discretion.  See Reynolds v. Sears, 93 F.3d 428, 436 (8th Cir. 1996).

## B.  Whether Liquidated Damages Are Mandatory

The Wiretap Act creates the following civil remedy:

> [A]ny person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be punished ... or shall be subject to suit ... .

18 U.S.C. § 2511(1)(a).  The accompanying damages provision states,

> (a)   In general. – Except as otherwise provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.
> ...

4

(c) ...

(2) In any other action under this section, the court <u>may assess</u> as damages whichever is the greater of–

    (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

    (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c)(2) (emphasis added).

"We begin our construction of [section 2520(c)(2)] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." <u>Harris v. Garner</u>, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). Section 2520(c)(2) grants a district court the authority to award liquidated damages with the term "may." "[T]he primary legal sense" of "may" is ordinarily "termed the 'permissive' or 'discretionary' sense." Black's Law Dictionary 993 (Deluxe 7th ed. 1990). The words "the court may assess" appear clear enough to truncate our analysis, but the Supreme Court has explained that this language is not always determinative.

"Although 'may' could be read as permissive ... the mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority." <u>Cortez Bird Chips, Inc. v. Bill Harbert Construction Co.</u>, 529 U.S. 193, 198 (2000). "The word 'may,' when used in a statute, usually implies some degree of discretion. This common-sense principle of statutory

construction is by no means invariable, however, and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." United States v. Rodgers, 461 U.S. 677, 706 (1983); Black's Law Dictionary 993 ("In dozens of cases, courts have held may to be synonymous with shall or must, usually in an effort to effectuate legislative intent.").

Before it was amended in 1986, the Wiretap Act stated that "[a]ny person whose communication is intercepted ... shall ... be entitled to recover actual damages ... ." 18 U.S.C. § 2520 (emphasis added). Congress then changed the mandatory term "shall" to the term "may," which suggests that Congress intended an award of damages to be discretionary. Because changes in statutory language "generally indicate[] an intent [of Congress] to change the meaning of the statute," United States v. NEC Corp., 931 F.2d 1493, 1502 (11th Cir. 1991), we conclude that Congress intended to delete the mandatory aspect of awarding damages under section 2520(c)(2). "Where the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have a different meaning." Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439, 1444 (D.C. Cir. 1988), cert. denied, 488 U.S. 1010 (1989).

The contrasting language that Congress used in subsection (c)(1) provides

6

additional support for our conclusion.  Section 2520(c)(1), which provides smaller damages for the interception of certain communications that are not encrypted or scrambled, states that "the court shall assess damages," but the very next subsection, (c)(2), which provides larger damages for all other cases, uses the term "may."  Based on this juxtaposition, it is clear that Congress intended the award of larger damages under subsection (c)(2) to be within the discretion of the trial court. As we have previously stated, "when Congress uses different language in similar sections, it intends different meanings."  Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854, 859 (11th Cir. 2000).  The plain meaning of the statute, therefore, controls.  See United States v. Ron Pair Enterprises, 489 U.S. 235, 242 (1989).

Whether damages under section 2520(c)(2) are discretionary or mandatory is an issue that has divided our sister circuits.  The Seventh Circuit was the first to address this issue, and it held that the language of section 2520(c)(2) requires trial courts to award damages to prevailing parties under the Wiretap Act.  Rodgers v. Wood, 910 F.2d 444, 448 (7th Cir. 1990).  The Seventh Circuit stated that the term "may" is "ambiguous" and "there is nothing in the legislative record explaining why Congress made the change from the word 'shall' to the word 'may.'  In the absence of any such statement, we are hesitant to read a grant of discretion to the

7

district courts where none had been permitted in the past." Rodgers, 910 F.2d at 448. Since then, the Fourth, Sixth, and Eighth Circuits have rejected this analysis and held that an award of damages under section 2520(c)(2) is discretionary based on the change in the plain language of section 2520(c)(2). Nalley v. Nalley, 53 F.3d 649, 652 (4th Cir. 1995); Dorris v. Absher, 179 F.3d 420, 429 (6th Cir. 1999); Reynolds, 93 F.3d at 434.

We agree with the perspective of the Fourth, Sixth, and Eighth Circuits that the decision of Congress to change the language of section 2520(c)(2) was deliberate. The use of the term "may" is plain and means that an award of damages under section 2520(c)(2) is discretionary. The contrary view of the Seventh Circuit is based on a method of statutory interpretation – a change in plain language is meaningless unless explained in legislative history – that appears to us backwards.

The Seventh Circuit also offered as a "more conclusive" reason for its decision that the mandatory award of smaller damages under subsection (c)(1) "defeats an inference that Congress intended to grant district courts the discretion to decide the cases in which the more severe penalties should attach." Rodgers, 910 F.2d at 448. As we explained above, the use of the discretionary term "may" in subsection (c)(2), in reference to the award of larger damages, in contrast with the mandatory term "shall" in subsection (c)(1), in reference to the award of

8

smaller damages, leads us to the opposite conclusion of the Seventh Circuit.  We

agree with the logic of the other circuits "that Congress chose to make the award of

[larger] damages discretionary, given the potential of the law to bring financial ruin

to persons of modest means, even in cases of trivial transgressions."  Reynolds, 93

F.3d at 435; Nalley, 53 F.3d at 653 ("Congress could just as well have intended to

grant district courts the discretion to accord similar leniency toward other less

serious violators of the Act.").

### C.  Whether the District Court Abused Its Discretion

Next we turn to whether the district court abused its discretion by not

granting DTV liquidated damages under section 2520(c)(2).  The district court

determined that Brown's violation of the Wiretap Act was de minimis.  The district

court found that Brown illegally obtained DTV programming for private viewing

at his home and did not otherwise profit from the interception.  The court also

found that the award of actual damages under 47 U.S.C. section 605(a) fully

compensated DTV for its commercial loss and the award of attorney's fees and

costs compensated DTV for pursuing this litigation.  In this circumstance, an award

of liquidated damages could easily be viewed as gratuitous.

The argument of DTV that the denial of liquidated damages against Brown

thwarts the intent of Congress to encourage private attorneys general to enforce the

9

Wiretap Act against violators fails. The district court ensured that DTV would be fully compensated both for its commercial loss, with an award of actual damages, and its litigation costs, with an award of attorney's fees and costs. In addition, the district court entered a permanent injunction against Brown, the future violation of which could bring about more severe penalties, including contempt sanctions, liquidated damages, or even punitive damages. This judgment, therefore, is more than sufficient to encourage a person injured by a violation of the Wiretap Act to bring a civil action against the wrongdoer.

DTV also asserts that the precedents relied upon by the district court involved less egregious violations of the Wiretap Act. That assertion is true but unavailing for DTV. In Nalley, for example, a former husband and his lover sued his former wife for liquidated damages arising from the wife's disclosure of their extramarital affair, which they discussed in a telephone conversation that was tape recorded in violation of the Wiretap Act. 53 F.3d at 650. The Fourth Circuit upheld the refusal of the district court to award any damages to the plaintiffs.

Similarly, in Reynolds, the Eighth Circuit upheld the denial of any damages or attorney's fees for former employees who sued their employer after he secretly tape recorded their conversations on the business telephone. 93 F.3d at 436. The court explained that the owner "had a legitimate business interest" in determining

10

whether a recent burglary was "an inside job" and in his concern about personal use of the business telephone. Id. The owner had "consulted a law enforcement officer who advised him, albeit incorrectly, that there was no problem in tapping one's own telephone. ... [The owner] was an amateur wiretapper, using unsophisticated equipment." Id.

Although the district court relied upon Nalley and Reynolds in denying DTV an award of liquidated damages, the district court did not follow their examples of denying a plaintiff any relief. The district court awarded DTV substantial relief, including an injunction, actual damages, attorney's fees, and costs. This contrast in awards confirms that the district court did not abuse its discretion.

### III. CONCLUSION

Because we conclude that the district court correctly determined that liquidated damages, under section 2520(c)(2) of the Wiretap Act, are discretionary, and the district court did not abuse its discretion in denying DTV liquidated damages, the judgment of the district court is

**AFFIRMED.**