DIRECTV, INC., Plaintiff,

v.

James Gregory BENSON, Daniel O. Cabeen, Larry Freeze, Marvin Howell, Jason Long, and R. Glenn Snider, Jr., Defendants.

No. 1:03CV1132.

United States District Court, M.D. North Carolina.

Aug. 18, 2004.

Stephen C. Keadey, Ellis & Winters, LLP, Leslie C. O'Toole, Raleigh, NC, for Plaintiff.

Daniel O. Cabeen, Westfield, NC, Pro Se Defendant.

Michael W. Patrick, Chapel Hill, NC, Michael A. Kornbluth, Durham, NC, for Defendants.

## ORDER

BEATY, District Judge.

On June 24, 2004, in accordance with 28 U.S.C. § 636(b), the Recommendation of the United States Magistrate Judge was filed and notice was served on the parties and a copy was given to the court.

Within the time limitation set forth in the statute, Plaintiff objected to the Recommendation.

The court has appropriately reviewed the portions of the Magistrate Judge's report to which objection was made and has made a de novo determination which is in accord with the Magistrate Judge's report. The court hereby adopts the Magistrate Judge's Recommendation.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend the complaint to dismiss the section 2512 claim (docket no. 24) is GRANTED. This ruling necessarily moots so much of Defendants' motion to dismiss (docket no. 14) as addresses this section 2512 claim, and it is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that so much. of Defendants' motion to dismiss (docket no. 14) as addresses the section 2511 claim is DENIED and so much of Defendants' motion to dismiss (docket no. 14) as addresses the conversion claim is GRANTED. Defendants' motion to dismiss (docket no. 14), therefore, is DENIED IN PART and GRANTED IN PART.

## RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE

DIXON, United States Magistrate Judge.

This matter is before the court on a motion to dismiss by Defendant Jason Long (docket no. 14–1) and on Plaintiff's motion for leave to amend the complaint (docket no. 24–1). Furthermore, Plaintiff has filed a notice of voluntary dismissal, dismissing its claims against Defendant

Daniel Cabeen (docket no. 23–1). The parties have responded in opposition to the respective motions and the matter is ripe for disposition. Since there has been no consent, the court must deal with the motions by way of a recommended disposition.

## FACTS

This is a civil action brought pursuant to (1) the Communications Act of 1934, 47 U.S.C. § 151 *et seq.,* as amended by the Cable Communications Policy Act of 1984, (2) Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("the 1984"), (2) Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("the federal wiretap act"), 18 U.S.C. § 2510 *et seq.,* as amended by the Electronic Communications Privacy Act of 1986, and (3) North Carolina law. In this lawsuit, DIRECTV alleges that each of the individual defendants purchased pirate access devices and then intercepted DIRECTV's satellite transmissions without paying DIRECTV.[1] The complaint seeks relief against the six individual defendants under 47 U.S.C. § 605(a) for unauthorized interception and receipt of satellite programming (Count I); under 18 U.S.C. § 2511(1)(a) for unauthorized interception of electronic communications (Count II); under 18 U.S.C. § 2512(1)(b) for possession of devices primarily useful for surreptitiously intercepting satellite transmissions (Count III); under 47 U.S.C. § 605(e)(4) for willful assembly or modification of a device or equipment used to intercept satellite cable programming (Count IV); and under North Carolina law for conversion based on Defendants' alleged unlawful interceptions of satellite transmissions for Defen-

dants' own use (Count V). The Complaint requests injunctive relief and damages. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 based on federal question jurisdiction, and the court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

## BACKGROUND

Plaintiff DIRECTV, Inc. ("DIRECTV") is an electronic communications company that provides television programming to millions of subscribers through a direct broadcast satellite system.[2] The satellite transmissions are electronically scrambled to prevent unauthorized use by persons not paying for a subscription or on a pay-per-view basis. Persons authorized to view DIRECTV programming are required to create an account, obtain a DIRECTV Access Card, and purchase other system hardware, including a satellite dish. Upon activation of the Access Card by DIRECTV, the subscribing customer can de-encrypt DIRECTV's satellite signal and view its television programming. Despite DIRECTV's security measures, several companies sell modified DIRECTV Access Cards and other so-called "pirate access devices," which permit the viewing of DIRECTV's programming without authorization by, or payment to, DIRECTV.

Plaintiff alleges that each of the six defendants purchased and used illegal pirate access devices designed to permit viewing of DIRECTV's television programming without authorization by, or payment to, DIRECTV. Compl. ¶¶ 6, 20–27. Plaintiff alleges that it executed writs of seizure with the assistance of the U.S. Marshals

---

1. This is one of many lawsuits filed by DIRECTV against thousands of individual defendants throughout the country, based on receipts, emails, and other records showing that the individual defendants purchased pirate access devices from numerous distributors.

2. DIRECTV is a California corporation with its principal place of business in California. The individual defendants are citizens of North Carolina.

Service on a business named the Computer Shanty in El Paso, Texas. Through the Computer Shanty raid, DIRECTV confiscated records that "confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's Satellite Programming." Compl. ¶ 8. According to Plaintiff, the records show that the Computer Shanty "provided its services to actively program and reprogram DIRECTV Access Cards at the request of customers eager to continue illegal access to DIRECTV's television programming without payment to DIRECTV" and that each of the six defendants purchased pirate access devices from the Computer Shanty. Compl. ¶¶ 8, 9.

## DISCUSSION

Before addressing the motions to amend and for dismissal, the court first addresses the effect of Plaintiff's Notice of Voluntary Dismissal as to Defendant Cabeen. On April 23, 2004, DIRECTV filed a notice, pursuant to Rule 41 of the Federal Rules of Civil Procedure, indicating that Plaintiff was dismissing without prejudice all claims against Cabeen "that are based on assisting third-parties to obtain Plaintiff's communications without authorization or commercial use, resale, distribution or manufacture of devices designed for surreptitious interception of communications"

and to dismiss *with* prejudice "all other claims" against Cabeen. As long as an adverse party has not responded to a complaint with an answer or a motion for summary judgment, Rule 41(a)(1)(i) allows a plaintiff to dismiss an action solely by filing a notice of dismissal with the court.[3] Rule 41(a)(1)(i) further provides that "*unless otherwise stated in the notice of dismissal or stipulation,* the dismissal is without prejudice ...." FED. R. CIV. P. 41(a)(1)(i) (emphasis added). Here, Plaintiff filed its dismissal notice before Defendant Cabeen filed an answer or a motion for summary judgment. Therefore, pursuant to the voluntary dismissal notice, all claims against Defendant Cabeen "based on assisting third-parties to obtain Plaintiff's communications without authorization or commercial use, resale, distribution, or manufacture of devices designed for surreptitious interception of communications" are dismissed without prejudice and all other claims against Cabeen are dismissed with prejudice.

The court next considers Plaintiff's motion to amend the complaint to delete its claim under 18 U.S.C. § 2512 and to add claims under North Carolina statutory law, more specifically, to allege claims under sections 14–113.5, 15A–287, and 75–1.1 of the North Carolina General Statutes against Defendants Benson, Freeze, How-

---

3. The language of Rule 41(a) specifically refers to the dismissal of an "action" rather than dismissal of a "defendant." Many circuits now hold, however, that Rule 41(a)(1) allows a plaintiff to dismiss without a court order any defendant who has yet to serve an answer or a motion for summary judgment. Rule 41(a)(1) is "designed to permit a disengagement of the parties at the behest of the plaintiff ... in the early stages of a suit, before the defendant has expended time and effort in the preparation of his case." *Armstrong v. Frostie Co.*, 453 F.2d 914, 916 (4th Cir.1971). Permitting a plaintiff to dismiss fewer than all of the named defendants is consistent with this purpose. Furthermore, this view is endorsed by the principal treatises on civil procedure. *See* 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2362 at 250 (2d ed.1995) (stating that "[t]he sounder view and the weight of authority" suggest that a plaintiff may use Rule 41(a)(1) to dismiss fewer than all of the named defendants). *See also Manning v. South Carolina Dep't of Highway & Pub. Transp.*, 914 F.2d 44, 46 (4th Cir.1990)(accepting sub silentio the validity of a dismissal of fewer than all defendants through a Rule 41(a)(1) motion).

ell, and Long.[4] Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Amendments that cannot withstand a motion to dismiss are futile and, as a result, the court may deny the motion to amend. It is often a better exercise of the court's discretion, however, and a conservation of judicial resources, to leave decisions on the merits with respect to motions to amend until the matter has been fully briefed in a motion to dismiss. In ruling on a motion to amend, a court should only delve into the merits when it is absolutely clear that the amendment is frivolous. *See generally* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 1487, at 635–43 (2d ed.1990). Furthermore, the court must wait for summary judgment briefing if there are any disputed facts that could affect the court's decision.

First, as to Plaintiff's motion to amend the complaint to dismiss the claim brought under 18 U.S.C. § 2512, the motion should be granted. This court recently held in a similar DIRECTV case that a plaintiff may not bring a private cause of action through section 2520 for an alleged violation of section 2512 based on a defendant's mere possession of pirate access devices. *DIRECTV, Inc. v. George Ingram et al.*, 1:03CV455 (M.D.N.C. Feb. 2, 2004), *adopted*, April 27, 2004 (unpublished). Thus, it appears that the claim is subject to dismissal for the reasons stated in *Ingram*. Indeed, here Defendant Long has moved to dismiss the section 2512 claim. It is therefore recommended that the court grant DIRECTV's motion to amend its complaint to dismiss the section

2512 claim. Alternatively, it is recommended that the court grant Defendant's motion to dismiss the section 2512 claim for the reasons stated in *Ingram*.

The court next considers Plaintiff's motion to amend the complaint to add three claims under North Carolina statutory law. First, Plaintiff wishes to amend the complaint to allege a claim under section 14–113.5 of the North Carolina General Statutes, which, among other things, makes it unlawful for any person knowingly to:

(1) Make, distribute, possess, use, or assemble an unlawful telecommunications device or modify, alter, program, or reprogram a telecommunication device designed, adapted, or which is used:

a. For commission of a theft of telecommunication service or to acquire or facilitate the acquisition of telecommunications service without the consent of the telecommunication service provider in violation of this Article, or

b. To conceal, or assist another to conceal, from any supplier of a telecommunication service provider or from any lawful authority the existence or place of origin or of destination of any telecommunication, or

(2) Sell, possess, distribute, give, transport, or otherwise transfer to another or offer or advertise for sale any:

a. Unlawful telecommunication device, or plans or instructions for making or assembling the same under circumstances evincing an intent to use or employ the unlawful telecommunication device, or to allow the same to be used or employed, for a purpose described in (1)a or (1)b above, or knowing or having reason to believe

---

4. There is no indication as to why DIRECTV does not name Defendant Snider as a Defendant in the proposed First Amended Complaint as to these additional claims. As to all other claims, Snider is still named as a Defendant in the proposed First Amended Complaint.

that the same is intended to be so used, or that the aforesaid plans or instructions are intended to be used for making or assembling the unlawful telecommunication device; or

b. Material, including hardware, cables, tools, data, computer software or other information or equipment, knowing that the purchaser or a third person intends to use the material in the manufacture of an unlawful telecommunication device . . . .

N.C. GEN. STAT. § 14–113.5.[5]

Plaintiff also wishes to amend the complaint to add a claim under the North Carolina Electronic Surveillance Act, Art. 16 of Chapter 15A of the General Statutes, N.C. GEN. STAT. § 15A–286 *et seq.* (2001). More specifically, Plaintiff wishes to allege a claim under section 15A–287 of the Act, which provides:

(a) Except as otherwise specifically provided in this Article, a person is guilty of a Class H felony if, without the consent of at least one party to the communication, the person:

(1) Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.

(2) Willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:

a. The device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communications; or

b. The device transmits communications by radio, or interferes with the transmission of such communications.

(3) Willfully discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through violation of this Article; or

(4) Willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this Article.

*See* N.C. GEN. STAT. § 15A–287.[6]

Finally, Plaintiff wishes to amend the complaint to add a claim against Defendants under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75–1.1 *et seq.* To prevail on such a claim, a plaintiff must prove (1) that defendant committed unfair or deceptive acts, (2) that defendant's action was in or affecting commerce, and (3) that the act proximately caused injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

---

5. Although section 14–113.5 is a criminal statute, section 14–113.6 allows for private civil actions to be brought for violations of section 14–113.5. *See* N.C. GEN. STAT. § 14–113.6.

6. Although section 15A–287 is a criminal statute, section 15A–296(a) allows for private civil actions to be brought for violations of section 15A–287. The North Carolina Court of Appeals has observed, however, that section 15A–296(a):

by its plain language, requires the actual interception, disclosure, or use of a communication as a prerequisite to maintaining a civil action and obtaining civil damages, in contrast to [N.C. GEN. STAT § 15A–287], which criminalizes a mere endeavor to intercept such a communication.

*Kroh v. Kroh*, 152 N.C.App. 347, 351, 567 S.E.2d 760, 763 (2002).

■ Here, Plaintiff should be allowed to amend the complaint to add the three above-stated claims. Plaintiff was not dilatory in bringing the motion to amend, nor is there danger of prejudice to Defendants if the court allows the amendment. The additional claims are based on the same facts as the claims alleged in the original complaint, the matter has not appeared on a trial calendar, and the parties have not yet requested nor produced any discovery. Furthermore, Plaintiff's desire to amend the complaint appears to stem from a good faith belief in the legitimacy of the claims sought to be added, rather than a bad faith attempt to manipulate the court's jurisdiction or cause undue delay. Finally, the three additional claims are not clearly frivolous or patently defective such that leave should be denied. Although Plaintiff's addition of the claims may ultimately prove to be unfruitful, the court will more efficiently conserve judicial resources by allowing the merits to be addressed either through a motion to dismiss or a motion for summary judgment. Therefore, the court will grant Plaintiff's motion to amend the complaint to add these three additional claims.

The court next considers Defendant Long's motion to dismiss Plaintiff's claims under section 2511 of the wiretap act and for civil conversion under North Carolina state law. In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F.Supp. 811, 813 (M.D.N.C.1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

Dismissal under 12(b)(6) is generally regarded as appropriate only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *McNair*, 95 F.3d at 328 (noting that the proper question is whether in the light most favorable to the plaintiff, the complaint states any valid claim for relief); *Food Lion*, 887 F.Supp. at 813. Stated differently, the issue is not whether the plaintiff will ultimately prevail on his claim, but whether he is entitled to offer evidence to support the claim. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989).

Generally, the court looks only to the complaint itself to ascertain the propriety of a motion to dismiss. *See George v. Kay*, 632 F.2d 1103, 1106 (4th Cir.1980). A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir.1978). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts which set forth a claim. With these principles in mind, I consider Defendants' motion to dismiss Plaintiff's claims under section 2511 and for civil conversion under North Carolina law.

In Count II of the complaint, DIRECTV alleges that Defendants violated 18 U.S.C. § 2511 by intentionally intercepting or endeavoring to intercept DIRECTV's satel-

lite transmissions. Section 2511, which is part of the federal wiretap act, generally makes unlawful the surreptitious interception of wire, oral, or electronic communications. Furthermore, section 2520 allows the victim of the interception to bring a civil action against the section 2511 violator. Defendant alleges that DIRECTV fails to state a claim under sections 2511 and 2520. For the following reasons, the court disagrees.

First, Defendant contends that DIRECTV bases the section 2520 claim on Defendant's alleged "procurement" of satellite signals and on Defendant's "endeavor to intercept" DIRECTV's signals. Section 2520(a) allows for a civil action to be brought based on section 2511 violations and provides that "any person whose wire, oral, or electronic communication is *intercepted, disclosed, or intentionally used* in violation of this chapter may in a civil action recover from the person or entity ... such relief as may be appropriate." 18 U.S.C. § 2520(a) (emphasis added). Section 2520 does not allow for civil actions based on either the act of "procuring" satellite signals or "endeavoring to intercept" signals. Defendant contends that DIRECTV therefore fails to state a claim under section 2520. Defendant fails to recognize, however, that DIRECTV also alleges that Defendants "intentionally intercepted," "disclosed," and "intentionally used" DIRECTV's satellite signals in violation of section 2511. The mere fact that Plaintiff also alleges that Defendants endeavored to intercept and procured other persons to intercept DIRECTV's signals does not invalidate Plaintiff's section 2511 claim. This argument is without merit.

Defendant next contends that section 2520 only allows for damages in cases in which a satellite signal is not scrambled or encrypted and therefore Plaintiff may not bring an action through section 2520 alleg-

ing a violation of section 2511. *See* 18 U.S.C. §§ 2520(c); 2511. To support his argument, Defendant cites *In re DIRECTV, Inc.,* No. 03–CV–28–BO (E.D.N.C. Jan. 20, 2004), in which the federal court for the Eastern District of North Carolina stated:

.... Under the plain language of the statute, § 2520(a) provides that a private individual may recover relief in a civil suit from the person or entity, other than the United States, who intercepted or disclosed that individual's wire, oral, or electronic communications. However, subsection (c) provides that an individual only may collect damages "if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is *not scrambled or encrypted* ...." 18 U.S.C. § 2520(c) (emphasis added).

As stated above, this Court is bound by the plain language of the statute where Congress is unambiguous. Section 2520(c) clearly identifies two worlds of satellite communication-one encrypted and the other not-and applies damages only to violations of communications that are not scrambled or encrypted. In this case, Plaintiff utilizes an encrypted satellite signal and employs advanced conditional access technology specifically to maintain the encryption. Indeed, the dispute in this case revolves around Defendants' alleged attempts at decrypting Plaintiff's encrypted satellite signal. Therefore, this Court finds that Plaintiff may not allege a violation of § 2511 by asserting a private cause of action under § 2520, as § 2520 applies only to private satellite video communication that is not scrambled or encrypted.

*Id.* at 7. For the following reasons, this court respectfully disagrees with that court's reading of the damages provisions of section 2520 and finds that section 2520

does allow for damages in cases involving the interception of scrambled or encrypted satellite signals. Before reaching its analysis, however, the court will first set forth the federal statutes applicable to Plaintiff's claims in this case.

### The Communications Act of 1934

The Communications Act was passed in 1934 and prohibits, among other things, the unauthorized divulgence of wire or radio communications. 47 U.S.C. § 151 *et seq.* The Act was amended in 1984 by the Cable Communications Policy Act, which establishes a national framework for regulating cable and satellite television. As is relevant to this case, section 605(a) of the Act provides, in pertinent part, that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Furthermore, section 605(e)(4) provides for criminal penalties against anyone "who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by [605(a)]...."[7] 47 U.S.C. § 605(e)(4). In this case, Plaintiff DIRECTV has alleged violations of sections 605(a) and 605(e)(4), and Defendant Long has not moved to dismiss these claims.

### The Federal Wiretap Laws

Title III of the Omnibus Crime Control and Safe Streets Act was passed in 1968. As enacted, Title III generally prohibited the interception of wire and oral communications. In the Electronic Communications Privacy Act of 1986 ("ECPA"), however, Congress enlarged the coverage of Title III to prohibit the interception of "electronic" as well as oral and wire communications. The ECPA was passed to update the Omnibus Crime Control and Safe Streets Act to take into account modern advances in electronic telecommunications and computer technology and to benefit law enforcement by creating clearer procedures for the use of investigative techniques involving the interception of communications. *See* S. REP. No. 99–541, at 11 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3565, 3559. Together, these statutes are often referred to as the "federal wiretap laws," as codified at 18 U.S.C. §§ 2510–2521.

Under the federal wiretap laws, section 2511 makes it unlawful to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication. Section 2511 is a criminal statute, which allows the federal government to impose certain criminal penalties, including up to five years imprisonment, as well as certain civil penalties against section 2511 violators.[8] Reflected in the penalty structure of section 2511 is the recognition that some section 2511 violators should be subject to less severe penalties than others. For instance, when enacting

---

7. Furthermore, section 605(e)(3)(A) provides that "[a]ny person aggrieved by any violation of [§ 605(a)] or [605(e)(4)] may bring a civil action in a United States district court." 47 U.S.C. § 605(e)(3)(A).

8. More specifically, the general criminal provision of section 2511 states that unless one of the listed exceptions applies, a person violating section 2511(1) is liable for a fine, imprisonment up to five years, or both. *See* 18 U.S.C. § 2511(4)(a).

the ECPA in 1986, Congress recognized that home viewers of satellite television sometimes inadvertently pick up unscrambled satellite signals on their televisions. 132 CONG. REC. S14441–04 (daily ed. Oct. 1, 1986). In Congress's view, although these persons technically violate section 2511 they should not be subject to the statute's harshest penalties.[9] Thus, certain interceptions of nonscrambled satellite signals are exempted from the statute's criminal penalties, *see* 18 U.S.C. §§ 2511(4)(b), 2511(5)(a)(i).

In addition to providing for criminal and civil actions by the federal government for section 2511 violations, the wiretap laws also allow for an individual victim of a section 2511 violation to bring a civil action against a section 2511 violator. Section 2520 provides:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a). Subsection (b) goes on to state that "appropriate" relief includes "(1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c) and punitive damages in appropriate cases; and (3) a reasonable attorney's fee and other litigation costs reasonably incurred." Subsection (c) provides two different rules for computing damages in section 2520 actions. The first rule is set forth in subsection (c)(1), and states:

(1) In an action under this section, if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the court shall assess damages as follows:

(A) If the person who engaged in that conduct has not previously been enjoined under section 2511(5) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $50 and not more than $500.

(B) If, on one prior occasion, the person who engaged in that conduct has been enjoined under section 2511(5) or has been found liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1000.

18 U.S.C. § 2520(c)(1). The second rule for computing damages is set forth in subsection (c)(2), and states:

(2) *In any other action under this section,* the court may assess as damages whichever is the greater of—

(A) the sum of the actual damages suffered by the plaintiff and any profits

---

**9.** *See United States v. Shriver* 989 F.2d 898, 903 (7th Cir.1993) (stating that "Congress, in enacting the 1986 amendments to the wiretap laws, intended to punish certain interceptors of satellite transmissions to home satellite dishes, but not all. Congress was well aware that the technology of satellite dishes makes it possible for their owners unintentionally to pick up certain types of unscrambled satellite transmissions ....").

made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c)(2) (emphasis added). As the plain language of the statute indicates, Congress has determined that damages for certain section 2511 violations shall be lower than damages imposed for other section 2511 violations, including when a person has privately viewed a private satellite video communication that is not scrambled or encrypted. In other words, Congress created subsection (c)(1) to serve as an *exception* to the general rule for damages under subsection (c)(2).[10] In concluding that section 2520(c) does not provide for damages at all in cases involving scrambled or encrypted satellite signals, the Eastern District of North Carolina appears to have ignored the issue of whether the general rule for section 2511 violations as set forth in subsection (c)(2) might encompass encrypted and scrambled satellite signals-in other words, whether the phrase "in all other cases [of a section 2511 violation]" was meant to include those cases in which satellite signals are scrambled or encrypted. The proper question, then, is whether the intentional interception of encrypted satellite signals constitutes a violation of section 2511 and is thus subject to damages under subsection (c)(2) of section 2520. In answering this question, the court must first look to the plain language of section 2511.

Under the plain language of the statute, a person violates section 2511 if he "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." Under the statute, "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). An "electronic, mechanical, or other device" is defined as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication . . . ." 18 U.S.C. § 2510(5). Finally, the term "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

■ First, it is undisputed that satellite television transmissions contain sounds and images and are carried via radio waves; therefore they constitute electronic communications under section 2510(12). *United States v. Splawn*, 982 F.2d 414, 416 (10th Cir.1992) (en banc) (collecting cases); *United States v. Davis*, 978 F.2d 415, 417

---

**10.** As Senate Report No. 99–541 explains:

Proposed subsection 2520(c) provides a method for the computation of damages. The general rule is set out in paragraph (2) of subsection (c). The court may assess damages consisting of whichever is the greater of (A) the sum of the plaintiff's actual damages and any profits the violator made as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day or $10,000. *An exception from that general rule* is set out in proposed paragraph (1) of subsection 2520(c). *This exception applies if the violation consists of the private or home viewing of an unencrypted or unscrambled private satellite video communication* or if the communication is an unencrypted or unscrambled radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the FCC rules, and the conduct is not for one of the enumerated bad purposes.
S. Rep. No. 99–541, at 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3581 (emphasis added).

(8th Cir.1992) ("Clearly, the language of [§ 2510(12)] is broad enough to include programming transmitted by satellites."). Furthermore, the act of using a device to unscramble a scrambled television signal and thus acquiring the "content" of the signal is certainly "interception" of an electronic communication as defined in section 2510(4). *United States v. Herring*, 993 F.2d 784, 786 (11th Cir.1993) (en banc) (collecting cases). Under the plain language of the statute, then, there is absolutely nothing to indicate that section 2511 excludes from its application intentional interceptions of *scrambled or encrypted* satellite signals, as opposed to nonscrambled or nonencrypted satellite signals. Furthermore, there is nothing whatsoever in the plain language of the damages provisions of section 2520 to indicate that the interception of scrambled satellite signals would not fall under the general damages provisions of subsection (c)(2), which provides for certain specified damages "in all other cases" (i.e., in all cases of section 2511 violations except those specifically listed in subsection (c)(1)). Thus, this court does not agree with the conclusion by the Eastern District of North Carolina that section 2520 does not provide for damages in cases involving the interception of scrambled satellite signals.

Despite the plain language of sections 2511 and 2520, admittedly at least one sentence in the legislative history of the federal wiretap laws has led to a split among the circuits as to whether the federal wiretap laws can be applied *at all* to the theft of satellite signals.[11] As the court has already observed, penalties for intercepting encrypted satellite signals have already been imposed under the Communications Act of 1934, 47 U.S.C. § 605, which provides, in pertinent part,

that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). To support his argument that Plaintiff may not also recover for theft of its satellite programming under the federal wiretap laws, Defendant cites a passage from Senate Report No. 99–541, in which Congress discussed the enactment of the ECPA (the 1986 amendments to the wiretap laws), stating:

> The private viewing of satellite cable programming, network feeds and certain audio subcarriers will continue to be governed exclusively by section 705 of the Communications Act of 1934, as amended, and not by Chapter 119 of title 18 of the United States Code.

S. REP. No. 99–541, at 22 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3576. Defendant argues that, under this language, the court must conclude that the Communications Act of 1934, and not the federal wiretap laws, provides the exclusive remedy for theft of satellite signals. Most circuits that have addressed the question, however, have held that, notwithstanding this admittedly ambiguous language in the Senate Report, the theft of satellite signals is indeed covered by the federal wiretap laws. For instance, in *United States v. Shriver*, 989 F.2d 898 (7th Cir.1993), the defendants were criminally charged with manufacturing and selling modified descramblers in violation of both the federal wiretap laws, 18 U.S.C. §§ 2511 and 2512, and under the Communications Act of 1934, 47 U.S.C. § 605. The parties agreed that the defendants were properly charged under the Communications Act of 1934.

---

11. This circuit's court of appeals has not yet been faced with the argument that the federal

wiretap laws do not apply to the theft of satellite signals.

Thus, the only question for the district court was whether the defendants could also be charged under the federal wiretap laws for the same conduct. The district court held that the manufacture and sale of modified descramblers is not covered by the federal wiretap laws and that such conduct is governed exclusively by the Communications Act.

On appeal, the *Shriver* court disagreed, stating that, based on the plain language of section 2511,

> one can only conclude that the use or encouragement of use of modified descramblers, if intentional, violates § 2511. As stated above, all agree that encrypted satellite transmissions to home satellite dishes are "electronic communications" within the meaning of the wiretap laws. Moreover, it is undisputed that modified descramblers are devices that, when used, "intercept" such scrambled, electronic communications without prior authorization.

*Id.* at 902. The court found that since the intentional use of modified descramblers is prohibited under the plain meaning of § 2511, there was no need to resort to the statute's legislative history unless it contained an explicit statement to the contrary. The court then examined the legislative history of the federal wiretap laws, stating:

> Defendants read [the above-cited statement from the Senate Report] to mean that Section 705 of the Communications Act of 1934, 47 U.S.C. § 605, is the only criminal statute under which the government can prevent the interception of encrypted satellite transmissions by modified descramblers, and, therefore, that the government improperly charged defendants under both the wiretap laws and the Communications Act of 1934. The district court agreed.

We, though, see it differently and find that there is nothing in the legislative history to contradict the plain meaning of § 2511. The statement relied upon by defendants and the district court must be read not only in the context of the legislative history of the wiretap laws as a whole, but also in light of the statutory scheme for punishing those who violate § 2511. When that is done, it becomes immediately apparent that Congress, in enacting the 1986 amendments to the wiretap laws, intended to punish certain interceptors of satellite transmissions to home satellite dishes, but not all. Congress was well aware that the technology of satellite dishes makes it possible for their owners unintentionally to pick up certain types of unscrambled satellite transmissions, such as network feeds or "backhauls". Consequently, Congress wanted to make it clear that it did not intend to impose criminal liability on the innocent interceptors of these types of unencrypted signals . . . . .

This is the context in which one must read the statement cited by defendants and the district court. Congress did not intend to exempt from the prohibitions of the wiretap laws all interceptions of satellite transmissions by owners of home satellite dishes. Congress only meant to exempt those interceptions that are unintentional or authorized, conduct which happened already to be exempted from criminal liability under Section 705(b) of the Communications Act of 1934, 47 U.S.C. § 605(b). Thus, when Congress stated that the "private viewing of satellite cable programming, network feeds and certain audio subcarriers will continue to be governed exclusively by" § 605, Congress must have been referring to only unintentional interceptions by home viewers of unscrambled satellite communications. As

for intentional interceptions, the punishment scheme outlined in § 2511(4) and (5) shows that the wiretap laws apply in full force, even though § 605(a) applies to the same conduct

Based on the foregoing, the court concludes that there is nothing in the legislative history of the wiretap laws to contradict the plain meaning of § 2511. The intentional and unauthorized interception of or the intentional and unauthorized procurement of another person to intercept encrypted satellite transmissions is illegal under § 2511, and modified descramblers are designed for the specific purpose of carrying out such illegal interceptions. Accordingly, § 2511 applies directly to the manufacture and sale of modified descramblers, and the district court improperly dismissed the counts of the superseding indictment charging defendants with violating § 2511, regardless of defendants' potential liability under Section 705 of the Communications Act of 1934 for the same alleged conduct.

*Id.* at 902–05 (citations and footnotes omitted). The *Shriver* court further observed that the legislative history behind the ECPA shows that Congress intended that the sanctions contained in the federal wiretap laws would be imposed in addition to, *and not instead of,* those contained in the Communications Act. *See id.* at 903 n. 12. In sum, the *Shriver* court concluded that the federal wiretap laws apply to the unlawful interception of scrambled and unscrambled satellite signals.

The Eighth Circuit has also concluded that the federal wiretap laws apply to the interception of encrypted satellite signals. *United States v. Davis,* 978 F.2d 415, 418–19 (8th Cir.1992). In *Davis,* a jury found the defendant guilty of, among other things, unauthorized reception of encrypted radio communications, in violation of 47

U.S.C. § 605(a); manufacturing and selling an electronic device primarily useful for the surreptitious interception of electronic communications, in violation of 18 U.S.C. § 2512(1)(b); and interception of encrypted electronic communications, in violation of 18 U.S.C. § 2511(1)(a). The defendant appealed his convictions under 18 U.S.C. §§ 2511 and 2512, claiming that his conduct was outside the scope of these statutes. The appellate court disagreed, finding that the plain language of section 2511 "includes programming transmitted by satellites." *Id.* at 417. The court stated that "[i]n excluding certain types of unencrypted and unscrambled satellite transmissions not intercepted for commercial advantage or private financial gain from the reach of section 2511(1), subsection (c) of 2511(4) establishes that satellite transmissions are contemplated by the Wiretap Act." *Id.* at 417–18. The court then went on to address the defendant's argument that the legislative history does not support such a conclusion, stating:

[Defendant] quotes language in [the Senate Report] stating that "[t]he private viewing of satellite cable programming, network feeds and certain audio subcarriers will continue to be governed exclusively by section 705 [47 U.S.C. § 605] of the Communications Act of 1934, as amended, and not by ... [the Wiretap Act]." However, 18 U.S.C. § 2511(4)(c) excludes from the Wiretap Act's proscriptions satellite transmissions transmitted "to a broadcasting station for purposes of retransmission to the general public," but only if the transmissions are not encrypted or scrambled.... In order to harmonize the statement in the Senate report (excluding satellite cable programming and network feeds from the Wiretap Act) with the plain language of section 2511(4)(c)(i), we must assume that the statement means only to exclude unen-

crypted and unscrambled programming and feeds from coverage by the Wiretap Act. Subsection 2511(2)(g)(iii)(II) supports this interpretation. Subsection 2511(2)(g)(iii)(II) states that it "shall not be unlawful under this chapter ... to engage in any conduct which ... is excepted from the application of ... [47 U.S.C. § 605(a)] by ... [47 U.S.C. § 605(b)]." Subsection 605(b)(1) expressly exempts programming that is not encrypted. Had Congress wished to exempt all satellite programming from the reach of the Wiretap Act, it would have been unnecessary to include in the Wiretap Act the narrower exclusion provided by subsection 2511(2)(g)(iii)(II).

Furthermore, when the ECPA was introduced, several senators expressed concern "about the bill's penalty structure for the interception of certain satellite transmissions by home viewers." Rather than remove interception of satellite transmissions by home viewers from the proscriptions of the Act, Congress responded to these concerns by altering the penalty provisions for this conduct, but only when the signals intercepted were unencrypted and unscrambled. Additionally, the Senate report accompanying the ECPA specifically mentions the private viewing of satellite programming and states that the section 2511(5) exception to the criminal penalties of section 2511(4)(a) & (b) only applies "if the communication is not scrambled or encrypted." Excluding unencrypted and unscrambled network feeds and programming from the Wiretap Act's scope makes sense since these signals may be easily and inadvertently intercepted by anyone with a dish antenna and appropriate tuner without illegal modifications to any element. Receiving and decrypting or unscrambling a satellite signal, however, takes significant effort and is not an act of inadver-

tence. Furthermore, the act of encrypting or scrambling a satellite signal evinces the originator's intent to prevent unauthorized persons from viewing the transmission and communicates this intent unequivocally to persons receiving the encrypted or scrambled signal. An unencrypted or unscrambled signal does not inherently demonstrate or communicate this intent.

*Id.* at 418–19 (8th Cir.1992) (citations and footnotes omitted).

The Ninth Circuit has also held that the federal wiretap laws apply to the interception of encrypted satellite signals. In *United States v. Lande,* the defendant was charged under the federal wiretap laws with modifying descrambler units to enable home satellite dish owners to view scrambled pay television programming without payment. 968 F.2d 907, 911 (9th Cir.1992). The defendant pled guilty to numerous charges and later appealed the conviction, arguing that the wiretap laws do not apply to piracy of satellite television. The *Lande* court concluded that, because the plain language of wiretap laws clearly covered Lande's conduct, and because the legislative history was ambiguous at best, the wiretap laws applied. Like the *Shriver* and *Davis* courts, the *Lande* court reasoned that "[i]f Congress had intended to exempt all satellite pay television transmissions from the coverage of the ECPA, it would have been unnecessary to include in the ECPA the narrower exclusion provided by subsection 2511(2)(g)(iii)(II)." *Id.* at 911. The court further stated that

[m]oreover, in contrast to the somewhat ambiguous statements concerning an exception for "satellite cable programming," other parts of the legislative history make it absolutely clear Congress intended the ECPA to overlap section

605, covering some conduct the earlier statute already prohibited.

*Id.* at 912.

Finally, the court notes that the Tenth and Eleventh Circuits have also held that the federal wiretap laws apply to the interception of encrypted satellite signals. *See United States v. Herring*, 993 F.2d 784, 788 (11th Cir.1993) (en banc) (stating the plain language of the federal wiretap laws clearly indicates "that Congress contemplated that the interception of satellite television programming would be covered under the [wiretap laws]"); *United States v. McNutt*, 908 F.2d 561, 564–65 (10th Cir.1990) (stating that "[a]lthough some legislative history to the contrary exists, the clarity of the statutory language contrasted with the ambiguity in the legislative history obliges us to follow the plain wording of the statute"). Thus, at least the Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have by now held that the federal wiretap laws apply to the theft of satellite signals even though the Communications Act also provides remedies for the same conduct.

I further note that in several recent DIRECTV cases, courts have held that DIRECTV has stated a claim through section 2520 based on the alleged interception of encrypted satellite signals in violation of section 2511. *See DIRECTV v. Brown*, 371 F.3d 814, 816–17 (11th Cir.2004) (assuming sub silentio that the general rule for damages, as provided in subsection (c)(2) of section 2520, includes damages for the interception of encrypted or scrambled satellite signals in violation of section 2511); *DIRECTV, Inc. v. Barnes*, 302 F.Supp.2d 774, 781 n. 5 (W.D.Mich.2004) (disagreeing with the conclusion of the Eastern District of North Carolina and stating that "subsection (c)(2) provides for actual or statutory damages '[i]n any other action,' which would include the situation here, where the satellite signal is scrambled or encrypted"); *DIRECTV, Inc. v. Brower*, 303 F.Supp.2d 856, 860 n. 3 (W.D.Mich.2004) (same); *DIRECTV, Inc. v. Beauchamp*, 302 F.Supp.2d 786, 791 n. 4 (W.D.Mich.2004) (same); *DIRECTV, Inc. v. Barrett*, 311 F.Supp.2d 1143, 1146 (D.Kan.2004) (also rejecting the Eastern District of North Carolina's conclusion that section 2520 does not provide for damages in cases involving the interception of encrypted or scrambled satellite signals). This court joins these other courts in concluding that the federal wiretap laws apply to the intentional interception of scrambled satellite signals. The plain language of sections 2511 and 2520 indicates that these statutes apply to the unlawful interception of encrypted satellite signals. Furthermore, although the one sentence in the Senate Report is ambiguous, as other courts have pointed out the legislative history contains other provisions indicating that the wiretap laws indeed apply to the unlawful interception of satellite signals. The plain meaning of a statute should be considered conclusive, except in the rare case in which the literal application of the statute will provide a result demonstrably at odds with congressional intent. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Here, the plain language of the federal wiretap laws is clear, and the legislative history of the ECPA is ambiguous at best. Thus, it cannot be said that concluding that the federal wiretap laws apply to the interception of scrambled satellite signals is "demonstrably at odds with congressional intent."

 Thus, having concluded that sections 2511 and 2520 of the federal wiretap laws apply to the intentional interception of scrambled satellite signals, the only task remaining is to consider whether DIRECTV has alleged a violation of section

2511 in this case sufficient to overcome Defendant's motion to dismiss. In support of its section 2511 claim, DIRECTV alleges that Defendants purchased pirate access devices that are used primarily to intercept DIRECTV's satellite programs without authorization by or payment to DIRECTV. Compl. ¶¶ 20–25, 27, 28. DIRECTV further alleges that Defendants used the pirate access devices to intentionally intercept electronic communications from DIRECTV while knowing or having a reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511. Compl. ¶ 38. Liberally construing the complaint in DIRECTV's favor for the purpose of this motion, I find that Plaintiff DIRECTV has stated a claim under section 2511 sufficient to withstand a motion to dismiss, and the motion should be denied as this claim.

■ DIRECTV also brings a claim for conversion under North Carolina law, alleging that "[b]y virtue of the conduct set forth above, Defendants have unlawfully converted DIRECTV's property for their own commercial use and benefit." Compl. ¶ 50. Defendant Long contends that DIRECTV fails to state a claim for conversion because the right to access DIRECTV's satellite signals is an intangible property right, and intangible property rights are not subject to conversion under North Carolina law. This court has already addressed this issue in *DIRECTV, Inc. v. George Ingram et al.*, 1:03CV455 (M.D.N.C. Feb. 2, 2004), *adopted*, April 27, 2004 (unpublished). In *Ingram*, the court found that DIRECTV failed to state a claim for conversion because the tort of conversion in North Carolina covers only the conversion of tangible property, while DIRECTV's satellite signal constitutes intangible property. Here, as in *Ingram*, DIRECTV fails to state a claim against Defendants for conversion under North Carolina law, and that claim should be dismissed.[12]

## CONCLUSION

For the reasons stated above, Plaintiff's motion to amend the complaint to add three additional claims under North Carolina statutory law is **GRANTED.** As for Plaintiff's motion to amend the complaint to dismiss the section 2512 claim, **IT IS RECOMMENDED** that the court **GRANT** the motion. Alternatively, **IT IS RECOMMENDED** that the court **GRANT** Defendant's motion to dismiss the section 2512 claim. Furthermore, **IT IS RECOMMENDED** that the court **DENY** Defendant's motion to dismiss the section 2511 claim and **GRANT** Defendant's motion to dismiss the conversion claim.

Dated June 18, 2004.

**12.** Since I have concluded as such, I find it unnecessary to address Defendant's alternative contention that the conversion claim is preempted by the Copyright Act, 17 U.S.C. § 301.