# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DIRECTV, INC.,
*Plaintiff-Appellant,*

v.

HOA HUYNH,
*Defendant-Appellee.*

No. 05-16361

D.C. No.
CV-04-03496-CRB

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

DIRECTV, INC.,
*Plaintiff-Appellant,*

v.

CODY OLIVER,
*Defendant-Appellee.*

No. 05-16362

D.C. No.
CV-04-03454-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
May 16, 2007—San Francisco, California

Filed September 11, 2007

Before: Betty B. Fletcher, Eugene E. Siler, Jr.,* and
Michael Daly Hawkins, Circuit Judges.

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

12263

Opinion by Judge B. Fletcher;
Dissent by Judge Siler

---

**COUNSEL**

Marc J. Zwillinger, Washington, D.C.; Howard R. Rubin, James A. Silver, Sonnenschein Nath & Rosenthal LLP, Washington, D.C.; Suzanne M. Burke, Buschalter Nemer, Irvine, California, for the plaintiff-appellant.

Jason Schultz, Electronic Frontier Foundation, San Francisco, California; Jennifer Stisa Granick, Trevor D. Dryer, Center for Internet and Society, Stanford Law School Cyberlaw Clinic, Stanford, California, for the amicus curiae.

---

**OPINION**

B. FLETCHER, Circuit Judge:

In the past three decades, satellite television programming has grown from nonexistence into a booming business, and piracy of such programming has grown apace. This case involves the attempts of a satellite programming provider to fight piracy among end-users of pirating technology through use of § 605(e)(4) of the Federal Communications Act.

**I.**

**A.**

Appellant DirecTV, Inc. ("DirecTV") furnishes satellite television programming in subscription and pay-per-view for-

mats to customers who have purchased both the programming and the necessary equipment. In order to watch the encrypted DirecTV programming, a customer must acquire a satellite dish, an integrated receiver decoder, and a smart card, which DirecTV calls an "access card." The satellite dish receives DirecTV's encrypted signals and transmits them to the receiver, which decrypts the signal and sends it to the customer's television. Software in the access card directs the receiver to decrypt only the signals conforming to the customer's subscription package.

Individuals who seek to watch DirecTV programming without payment ("pirates") have developed methods of decrypting DirecTV's signals without subscription. By reprogramming or replacing legitimate access cards with illicit decoder technology, pirates have managed to gain unauthorized access to all of DirecTV's programming.

DirecTV fights pirates by transmitting electronic countermeasures ("ECMs") that disable illegally modified access cards by sending their access software into a loop. Once an ECM has disabled, or "looped," an illegal card, the card will not direct its receiver to access DirecTV programming unless the access card is reprogrammed. One such reprogramming device, and the device relevant on this appeal, is an "unlooper," a printed circuit board that restores functionality to a disabled access card by resolving the software loop created by the ECM. As amicus acknowledges, most unloopers currently are configured exclusively for pirating DirecTV's satellite signal.

**B.**

DirecTV's fight against piracy makes frequent use of the courts. *See* http://www.hackhu.com (website maintained by DirecTV chronicling anti-piracy litigation actions against 25,000 defendants). In the consolidated cases at bar, DirecTV brought claims against two end-users of pirating technology,

defendants-appellees Hoa Huynh and Cody Oliver. The complaints allege that the defendants each purchased one unlooper and used it "to illegally modify DIRECTV Access Cards." Complaint at 4, *DirecTV, Inc. v. Huynh*, No. 04-cv-3496-CRB; *see also* Complaint at 3, *DirecTV, Inc. v. Oliver*, No. 04-cv-3454-SBA.[1] According to the complaints, these actions constituted conversion and violated both the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605(a), (e) and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521.

Defendants failed to appear or otherwise respond to DirecTV's complaints; in defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaints. *See* Fed. R. Civ. P. 55(a); *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986). DirecTV moved for a default judgment and $20,000 in statutory damages against each defendant for violations of 47 U.S.C. § 605(e)(4), or alternatively, for violations of 18 U.S.C. § 2520(a), or alternatively, for violations of 47 U.S.C. § 605(a). The district court issued two separate orders in which it granted DirecTV's motions for default judgment as to liability and damages under 18 U.S.C. § 2520(a), declined to grant default judgment

---

[1]The complaints, which charged identical claims and made the same allegations as to § 605(e)(4) for each appellee, read in relevant part:

> [Appellees] knowingly manufactured, assembled, sold, distributed, or modified an electronic, mechanical or other device or equipment knowing, or having reason to know, that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite programming, or direct-to-home services, or is intended for any other prohibited activity. Upon information and belief, [Appellees] actively programed and reprogrammed DIRECTV Access Cards and designed electronic systems for use in surreptitiously obtaining DIRECTV satellite programming. Further, by removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV Receivers, [Appellees] engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of satellite programming.

pursuant to 47 U.S.C. § 605(e)(4), and declined to reach the issue of liability under § 605(a). DirecTV appeals from the district court's decision not to grant default judgment as to liability under § 605(e)(4).[2]

In Oliver's case, the district court (the Honorable Saundra B. Armstrong presiding) stated that "47 U.S.C. § 605(e)(4) is meant to target upstream manufacturers and/or distributors of illegal pirating devices." *DirecTV, Inc. v. Oliver*, No. 04-cv-3454, 2005 WL 1126786, at *3 (N.D. Cal. May 12, 2005) (order granting default judgment pursuant to 18 U.S.C. § 2520(a), but not pursuant to 47 U.S.C. § 605(e)(4)). Stating that a showing that defendant "distributed or sold equipment" was necessary to establish a violation of § 605(e)(4), *id.* at *4, the district court concluded that the complaint's lack of any allegation that Oliver had sold or distributed pirating devices meant that DirecTV had pled insufficient facts to establish a violation of 47 U.S.C. § 605(e)(4). The court, therefore, declined to grant a default judgment against appellees on that ground. *Id.*

In Huynh's case, the district court (the Honorable Charles R. Breyer presiding) dismissed the allegation that Huynh's insertion of a modified access card into a DirecTV receiver constituted "assembl[ing]" a piracy device, stating that a con-

---

[2]47 U.S.C. § 605(e)(4) reads:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

trary ruling would "totally destroy the distinction between 605(e)(4) and 605(a)." *DirecTV, Inc. v. Huynh*, No. 04-cv-3496-CRB, at 16 n.11 (N.D. Cal. May 31, 2005) (memorandum and order granting default judgment pursuant to 18 U.S.C. § 2520(a), but not pursuant to 47 U.S.C. § 605(e)(4)). The court next concluded that § 605(e) did not apply to allegations that Huynh programmed and reprogrammed a smart card. *Id.* at 16 (noting statutory damages range of $1,000-$10,000 for violations of § 605(a) and range of $10,000-$100,000 for violations of § 605(e)(4)). Finding significance in Congress's decision to create different liabilities for users and manufacturers of pirating devices in § 605(a) and (e)(4) respectively, the district court determined that applying § 605(e)(4) to Huynh's alleged conduct "would nullify the distinction built into the statute." Accordingly, the district court concluded that DirecTV did not plead a violation of § 605(e)(4). *Id.*

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 to review the default judgments. We review them for abuse of discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980); *see also Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (setting out factors to guide district court's determination regarding the appropriateness of granting a default judgment). We review de novo questions of statutory construction such as the reach of § 605(e)(4). *SEC v. Gemstar TV Guide Int'l, Inc.*, 367 F.3d 1087, 1091 (9th Cir. 2004).

## III.

### A.

Home reception of satellite television programming began in 1976, one year after Home Box Office, Inc. (HBO) began satellite transmissions of its movies to cable television providers. H.R. Rep. No. 100-887(II), at 10 (1988), *reprinted in*

1988 U.S.C.C.A.N. 5577, 5639. At that time, home reception of such signals was of questionable legality, as § 605[3] of the Federal Communications Act outlawed the unauthorized reception of radio communications. 47 U.S.C. § 605 (1968); *see also Chartwell Commc'ns Group v. Westbrook*, 637 F.2d 459, 466 (6th Cir. 1980) (holding the unauthorized reception of television signals intended for cable television operators violated § 605). Congress clarified the legality of home reception of satellite television programming in the Cable Commu-

---

[3]In 1976, § 605 read:

> Except as authorized by chapter 119, title 18, United States Code, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is broadcast or transmitted by amateurs or others for the use of the general public, or which relates to ships in distress.

Pub. L. No. 90-351, 82 Stat. 197 (codified at 47 U.S.C. § 605 (1968)). This section was redesignated § 705 by the Cable Communications Policy Act of 1984, Pub. L. No. 98-549, § 6(a), 98 Stat. 2779. However it is still codified as § 605, now under subheading (a).

nications Policy Act of 1984 ("Cable Act") by outlawing the unauthorized reception of satellite programming unless the programming was not encrypted or a subscription process had not been created. Pub. L. No. 98-549, § 5, 98 Stat. 2779 (codified at 47 U.S.C. § 605(a)-(b) (1984)). The Cable Act substantially increased penalties for unauthorized signal reception by pirates seeking "commercial advantage or private financial gain." *Id.* (codified at 47 U.S.C. § 605(d)(1)-(2) (1984)). It subjected to penalty the "importation, manufacture, sale, or distribution of equipment" to be used for unauthorized signal reception, *id.* (codified at 47 U.S.C. § 605(d)(4) (1984)); in 1988, Congress added prohibitions on the assembly or modification of equipment to be used for unauthorized signal reception. Pub. L. No. 100-667, § 205(12), 102 Stat. 3935 (codified at 47 U.S.C. § 605(e)(4) (1988)). The 1988 amendments again increased the penalties for unauthorized signal reception while maintaining the Cable Act's system of authorizing harsher punishment for pirates motivated by commercial gain. *Id.* at § 205(2), (3), (9)-(11) (codified at 47 U.S.C. § 605(e)(1)-(3) (1988)). For example, while end-users of pirating technologies faced criminal sanctions of a fine of up to $2,000 or imprisonment for up to six months, § 605(e)(1), pirates motivated by commercial gain faced criminal sanctions of a fine of up to $50,000, imprisonment for up to two years, or both, § 605(e)(2). The civil penalties reflected this two-tiered punishment rubric: end-users of pirating technology faced statutory damages of $1,000 to $10,000 per violation, while upstream pirates—the programmers and sellers of pirating technology—faced statutory damages of $10,000 to $100,000 per violation. 47 U.S.C. § 605(e)(3)(C)(i)(II) (1988). This two-tiered damages provision has not been substantively changed since 1988. *See* 47 U.S.C. § 605(e)(1)-(3) (1996).

The question presented in these appeals is whether appellees' use of the unloopers constituted assembly and modification of piracy devices in violation of § 605(e)(4).

**B.**

### 1. Specific Allegations

#### *A. Assembly*

**[1]** The complaints assert that "by removing and inserting" into DirecTV receivers previously-disabled access cards that had been restored by an unlooper, appellees illegally assembled piracy devices in violation of subsection (e)(4). Complaint at 6, *DirecTV, Inc. v. Huynh*, No. cv-04-3496-CRB; Complaint at 6, *DirecTV, Inc. v. Oliver*, No. cv-04-3454-SBA. We reject the premise because this interpretation of "assembly" would sweep into the ambit of subsection (e)(4) even the minimum actions necessary to intercept a satellite signal that are violations of subsection (a). Adopting this interpretation would destroy the two-tiered approach established by Congress and would render subsection (a) redundant. We must make "every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991); *see also United States v. Novak*, 476 F.3d 1041, 1048 (9th Cir. 2007) ("We avoid whenever possible statutory interpretations that result in superfluous language."). Therefore, we reject DirecTV's attempt to collapse the distinction between subsections (a) and (e) and hold that inserting modified access cards into DirecTV receivers does not constitute assembly as that term is used in subsection (e)(4).

### B.    Modification[4]

**[2]** DirecTV contends that by "programm[ing] and reprogramm[ing]" DirecTV access cards, appellees modified devices in violation of § 605(e)(4). Because subsection (e)(4) prohibits only the modification of devices that are "primarily of assistance in the unauthorized decryption of satellite cable programming," the question is whether DirecTV's access cards are such devices "primarily of assistance" in piracy. Our decision in *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381 (9th Cir. 1995), is instructive. In that case, *Allarcom*, a television programming provider, brought an action against the manufacturer of the VideoCipher II system ("VC II"), General Instrument, alleging a violation of § 605(e)(4). *Id.* at 383-84. The VC II encrypted and decrypted satellite television signals, *id.* at 384, and set the industry standard for encryption technology, *id.* at 386. Because many pirates modified the VC II in order to illicitly intercept satellite signals, Allarcom alleged that General Instrument's sale of the VC II constituted distribution of a device "primarily of assistance in the unauthorized decryption of satellite cable programming." *Id.* at 385. We rejected Allarcom's argument, holding that an "anti-piracy device" such as the VC II is not a device " 'primarily of assistance' in piracy" simply because some modify it in order to pirate satellite programming. *Id.* at 386. As we explained, "the VC II is useful for piracy only because so much of the [subscription television] industry employs it to prevent piracy. Therefore, sale of that product . . . does not violate the FCA ([Federal Communications Act])." *Id.* By the same token, DirecTV's access cards, which are anti-piracy devices integral to DirecTV's subscription process, are not devices "primarily of assistance" in piracy.

---

[4]The complaints' allegations that appellee "designed electronic systems for use in surreptitiously obtaining DIRECTV satellite programming" does not constitute a well-pleaded allegation, *see* Fed. R. Civ. P. 55(a), because it does not make clear what systems were designed or what piracy devices were modified.

DirecTV's access card is used in every legitimate system to limit a receiver's decryption of programming to that for which the subscriber has paid. While the card's centrality to DirecTV's efforts to prevent the pirating of satellite transmissions makes the cards targets for pirates' modification, we reject DirecTV's argument that their access cards are devices "primarily of assistance in the unauthorized decryption of satellite cable programming." *See* § 605(e)(4). Therefore, the complaints fail to allege modification of a piracy device in violation of subsection (e)(4).

## 2. General Allegations

[3] In reviewing a default judgment, this court takes "the well-pleaded factual allegations" in the complaint "as true." *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir. 1992); *see also* Fed. R. Civ. P. 55(a); *Benny*, 799 F.2d at 495. However, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). DirecTV's allegations that parrot the language of subsection (e)(4) by alleging that appellees "knowingly manufactured, assembled, sold, distributed, or modified an electronic, mechanical or other device or equipment knowing, or having reason to know, that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite programming, or direct-to-home services, or is intended for any other prohibited activity" are not well-pleaded facts; they are simply DirecTV's legal conclusions, which appellees are not held to have admitted through default. *See* Fed. R. Civ. P. 55(a); *Benny*, 799 F.2d at 495.

## 3. Statutory Context

[4] Reading § 605 as a whole makes clear that Congress intended to treat differently individuals who played different roles in the pirating system. In contrast to subsection (a)'s tar-

geting of individuals who use piracy devices to intercept satellite signals, subsection (e)(4) aims at bigger fish—the assemblers, manufacturers, and distributors of piracy devices. The statute's two-tier damages provision treats each class quite differently, subjecting violators of subsection (e)(4) to significantly harsher penalties than those levied against violators of subsection (a). *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Because reprogramming access cards and inserting these modified access cards into DirecTV receivers is necessary to intercept signals in violation of subsection (a), treating these actions as violations of subsection (e)(4) would collapse the distinction Congress established. The context of subsection (e)(4) and its penalties indicate that Congress intended that it apply to those who make piracy devices for commercial purposes rather than to end-users who employ piracy devices for individual personal use. The district court properly determined that § 605(e)(4) does not apply to individual end-users. In so concluding, we join the majority of courts who have interpreted § 605(e)(4)'s application to end-users. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Mendez*, No. 03cv2170, slip. op. at 2 & n.5 (E.D.N.Y. Dec. 28, 2006) (holding § 605(e)(4) inapplicable to end-users); *DirecTV, Inc. v. Turnbough*, No. 04-cv-2409-GEB-GGH, slip op. at 2 (E.D. Cal. Jan. 30, 2006) (same); *DirecTV, Inc. v. Bowen*, No. 04-cv-2407-GEB-GGH, slip op. at 2 (E.D. Cal. Dec. 8, 2005) (same); *DirecTV, Inc. v. Gagnard*, No. Civ. A. 03-2177-A, slip op. at 3 (W.D. La. Aug. 16, 2005) (holding that programming bootloaders does not constitute modification, and that inserting and removing access cards does not constitute assembly, within the meaning of § 605(e)(4)); *DirecTV, Inc. v. Neznak*, 371 F. Supp. 2d 130, 133 (D. Conn. 2005) (holding that the use of an unlooper is not a modification within the meaning of the statute); *Joe Hand Promotions v. Hernandez*, No. 03 Civ. 6132 (HB), slip op. at 3 (S.D.N.Y. June 30, 2004) (holding that § 605(a)(4) applies to distributors of pirating devices not to end-users of these devices); *DirecTV, Inc. v. Alvares*, No. Civ. A.L.: 03 38, slip op. at 3 (S.D. Tex. Mar. 23, 2004) (holding that the purchase of an unlooper did not violate § 605(e)(4)). *But see*

*DirecTV, Inc. v. Robson*, 420 F.3d 532, 543-44 (5th Cir. 2005) (ruling that § 605(e)(4) is not categorically inapplicable to "individual users");**[5]** *DirecTV, Inc. v. Estrada*, No. Civ. A. L-03-cv-135, slip op. at 3 (S.D. Tex. Sept. 26, 2005) (holding that purchase of unlooper creates presumption of modification in violation of § 605(e)(4)); *DirecTV, Inc. v. Crumlish*, No. Civ. A. 03-3265, slip op. at 1 (E.D. Pa. July 16, 2004) (holding that pleadings tracking statutory language established violation of § 605(e)(4)); *cf. DirecTV, Inc. v. Brasswell*, No. 4:03-cv-330A, slip op. at 2 (N.D. Tex. July 12, 2004) (holding that admission of repairing access cards "likely establishes" modification in violation of § 605(e)(4) but does not establish that defendant was the modifier).

## Conclusion

**[5]** The district court properly refused to grant default judgment under § 605(e)(4). These complaints failed to state violations of subsection (e)(4), and further, subsection (e)(4) does not apply to personal use. Although the district court in *Oliver* abused its discretion by reading out of the statute the terms "assembles" and "modifies" in requiring allegation of sale or distribution in order to establish a violation of subsection (e)(4), we nonetheless affirm the *Oliver* holding on the alternative grounds explained above. *See Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1132 (9th Cir. 2002) ("We may affirm

---

**[5]**Although the Fifth Circuit refused to categorically exclude individual users from liability under § 605(e)(4), *see Robson*, 420 F.3d at 542-44 (rejecting district court's statement that 605(e)(4) "is a provision relating to manufacturers and sellers, rather than to individual users"), it did not address whether the types of activities individual users typically engage in (including the activities alleged in this case's two complaints) would violate § 605(e)(4)—e.g., whether inserting an access card into a receiver would constitute "assembly," or whether programming an access card would constitute "modification" of a device "primarily of assistance in the unauthorized decryption of satellite cable programming." *Compare supra* Parts III.B.1.A & III.B.1.B, *with* 420 F.3d at 542-44. Thus, we do not read our opinion to be in conflict with the Fifth Circuit's narrow holding in *Robson*.

the district court's judgment on any ground supported by the record, even if the district court did not rely on the ground.").

**AFFIRMED.**

---

SILER, Circuit Judge, dissenting:

I respectfully dissent, for I would find that the district courts erred in determining that 47 U.S.C. § 605(e)(4) does not apply to individual use. The language in the statute is clear and it is in the disjunctive. That is, it forbids specific conduct by "any person who manufactures, assembles, modifies, . . . or distributes any electronic, mechanical or other device or equipment." The statute does not limit its application to manufacturers and sellers. If Congress had intended to limit its reach to commercial use, it would have said so.

Although it is a matter of first impression in this circuit, other circuits have held that § 605(e)(4) is not categorically inapplicable to end users. *See DirecTV, Inc. v. Pernites*, 200 Fed. Appx. 257, 2006 WL 2711978, at *1 (4th Cir. Sept. 21, 2006); *DirecTV, Inc. v. Robson*, 420 F.3d 532, 543-44 (5th Cir. 2005). Moreover, the Second Circuit has ordered the entry of a default judgment based on a complaint similar to the one in this case that tracked the language of the statute. *See DirecTV, Inc. v. Meinhart*, 158 Fed. Appx. 309, 311, 2005 WL 3370463, at *1 (2d Cir. Dec. 9, 2005). Apparently no circuit has yet to rule to the contrary.

For these reasons, I would reverse the decisions of the district court in denying the motions for default judgments in both cases.