PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DIRECTV, INCORPORATED,
            *Plaintiff-Appellant,*

v.                                          No. 06-1430

JOHN J. RAWLINS,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(5:04-cv-00129)

Argued: December 7, 2007

Decided: April 21, 2008

Before DUNCAN, Circuit Judge, HAMILTON,
Senior Circuit Judge, and Catherine C. BLAKE,
United States District Judge for the District of Maryland,
sitting by designation.

Vacated and remanded by published opinion. Judge Duncan wrote the
opinion, in which Senior Judge Hamilton joined. Judge Blake wrote
a separate concurring opinion.

## COUNSEL

**ARGUED:** Howard Robert Rubin, SONNENSCHEIN, NATH &
ROSENTHAL, L.L.P., Washington, D.C., for Appellant. Ray Martin
Kline, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Samuel

Bryant Davidoff, SONNENSCHEIN, NATH & ROSENTHAL, L.L.P., Washington, D.C., for Appellant.

---

**OPINION**

DUNCAN, Circuit Judge:

Appellant DIRECTV, Inc. ("DIRECTV"), a satellite television service provider, commenced this action in the Western District of North Carolina against appellee John Rawlins. DIRECTV alleged that Rawlins utilized illegal devices to access DIRECTV television programming beyond the level of his paid subscription in violation of, as relevant here, the Cable Communications Policy Act of 1984 (the "Cable Act"), 47 U.S.C. § 605(a), and the Electronic Communications Privacy Act of 1986 (the "Wiretap Act"), 18 U.S.C. § 2511. After Rawlins failed to respond, the district court entered default judgment against him under both statutes. The court permanently enjoined Rawlins from continuing to violate the laws and awarded DIRECTV attorney's fees and costs. However, the court declined to award the statutory damages DIRECTV requested under either of the relevant statutory provisions.

On appeal, DIRECTV challenges only the district court's denial of statutory damages under the Wiretap Act. Finding that the district court abused its discretion, we vacate the judgment and remand for further proceedings consistent with this opinion.

I.

This litigation arises in the wake of recent dramatic technological changes in the home entertainment industry, a brief description of which provides the context for our decision here. DIRECTV provides satellite television programming to its customers through subscription services and pay-per-view options. Programming content is distributed to customers via encrypted (i.e., scrambled) signals, which are sent to satellite dishes, decrypted by receivers, and then delivered to customers' televisions. DIRECTV manages the amount and type of content provided to customers by the use of "access cards," small

credit card-sized devices containing chips that instruct receivers to decrypt only those signals covered by individual customers' subscription packages. These access cards also monitor customers' pay-per-view purchases.

This method of home television viewing is a fairly recent innovation. *See* H.R. Rep. No. 100-887(II), at 10 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577, 5639 (discussing history of satellite-relayed cable programming). In 1975, Home Box Office Inc. ("HBO") began delivering movies to cable television operators via satellite. These cable operators would pay HBO, and later other satellite carriers, per-subscriber fees for access to their signals, and then deliver the signals to subscribers over cable wire. Problems arose after technological advances enabled owners of backyard satellite dishes to receive satellite carriers' signals directly, without paying the carriers or the cable operators. The legality of this practice was immediately challenged. Though not explicitly prohibited by statute, the practice was considered illegal by the Federal Communications Commission ("FCC") and held by several courts to be a prohibited use of satellite signal. However, satellite carriers were not content to rely on the legal system to prevent this type of access to their signal. Thus, they began using encryption technology and providing decryption capacity only to paying customers, effectively cutting off access to others. *Id.*

In 1984, the Cable Act was enacted, clarifying the law respecting use of this technology. It legalized the sale and use of backyard dishes, authorized owners of these dishes to receive unencrypted signals under certain circumstances, and increased penalties for unauthorized signal reception, including the reception of encrypted signals. Two years later, Congress passed the Wiretap Act to enhance Federal privacy protection in the rapidly evolving telecommunications industry. *See* 132 Cong. Rec. S14441-04 (daily ed. Oct. 1, 1986) (statement of Sen. Leahy) (describing the need for updates to the then-existing law in light of technological advances and the cumbersome structure of the telecommunications industry). In the years following the passage of these Acts, satellite television became a multi-billion dollar business. As the industry grew, so too did efforts to gain unauthorized access to its programming.

DIRECTV entered the market in 1994, providing, as an alternative to cable television, all-digital multi-channel television programming

delivered directly to home viewers via satellite. Before long, technologically sophisticated scofflaws found methods for reprogramming or replacing DIRECTV access cards with illicit decoder technology that allowed home viewers, or "end-users," to gain access to DIRECTV programming without payment. In response, DIRECTV developed electronic counter-measures, including, for example, transmitting occasional bursts of data that had the effect of disabling unauthorized access cards without harming legitimate DIRECTV access cards. In short order, however, a market emerged around the design and sale of illegal "pirate access devices," which restore the ability of disabled access cards to unscramble DIRECTV's encrypted signals or otherwise allow their users to gain access to DIRECTV's signal without payment.

In addition to availing itself of technological remedies, DIRECTV has increasingly turned to the legal system. Utilizing civil enforcement mechanisms contained in the Cable Act and the Wiretap Act, DIRECTV has aimed to curb piracy by filing complaints against alleged violators, seeking injunctive relief, damages, attorney's fees and costs. To date, DIRECTV has initiated anti-fraud and anti-piracy enforcement actions against more than 25,000 defendants. *See DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 850 (9th Cir. 2007) (citing website maintained by DIRECTV chronicling its anti-piracy litigation efforts). The case before us is one such action.

## II.

On December 1, 2001, and January 28, 2002, with the assistance of the United States Marshals Service, DIRECTV executed writs of seizure on "The Computer Shanty" and "EQ Stuff," two alleged sellers of pirate access devices. Among the items confiscated were business records that implicated Rawlins, among others. According to the seized records, Rawlins purchased the following illegal devices from The Computer Shanty: one "Netsignia 210 Programmer," one "ULPRO X Super Unlooper," and one "ULTCOMBO," which consists of a "Shanty Unlooper," a "Shanty PS2 Blue Emulator," a "Shanty Programmer," and a "Shanty Bootloader."[1] From EQ Stuff,

---

[1]A "Programmer" is a device used to clone or program an access card to receive unauthorized programming. An "Unlooper" is used to restore

Rawlins purchased one "EQ Zapulator" (a type of emulator) and one "EQ Amtel Programmer." Rawlins had each of these devices shipped to Charlotte, North Carolina, and used them to display and view DIRECTV programming without authorization. Rawlins paid a total of $852.00 for these devices. *See* J.A. 42-44.

On the basis of this information, DIRECTV filed a civil complaint against Rawlins on September 3, 2004, alleging, inter alia, violations of the Cable Act and Wiretap Act. When Rawlins failed to appear, the clerk entered Rawlins's default upon DIRECTV's motion.[2] DIRECTV thereafter moved for default judgment, seeking a permanent injunction, statutory damages,[3] attorney's fees and costs. On March 8, 2006, the district court granted the motion for summary judgment with respect to DIRECTV's Cable Act and Wiretap Act claims.[4]

---

functionality to illegally modified access cards that were disabled by misuse or by DIRECTV's electronic counter-measures. An "Emulator" links an access card slot on a DIRECTV receiver to a personal computer, allowing the user to run software on the computer to emulate the functions of an access card without susceptibility to DIRECTV's electronic counter-measures. A "Bootloader" allows the user to circumvent certain electronic counter-measures deployed by DIRECTV to disable unauthorized access cards. *See* J.A. 36-39 (Whalen Aff. at 12-15).

[2]Due to Rawlins's default, we accept DIRECTV's allegations against him as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

[3]DIRECTV moved for statutory damages only, and not for actual damages, because Rawlins's default made it difficult for DIRECTV to prove actual damages. We also note that, in its motion for default judgment, DIRECTV prayed for $10,000 in statutory damages but did not specify whether it believed such damages should be awarded under the Cable Act or the Wiretap Act. In its supplemental memorandum in support of its motion, however, DIRECTV explained that it was seeking an award under the statutory damage provisions of both Acts, presumably in the alternative.

[4]The district court denied default judgment on a claim against Rawlins for willfully assembling or modifying devices or equipment, brought pursuant to 47 U.S.C. § 605(e)(4). DIRECTV did not appeal this denial. DIRECTV also included various state law claims in its complaint, but abandoned these when moving for default judgment.

Turning to the requested relief, the court permanently enjoined Rawlins from violating 47 U.S.C. § 605(a) or 18 U.S.C. § 2511, and awarded DIRECTV costs and fees in the total amount of $556.96. The district court did not, however, grant DIRECTV statutory damages under either Act. Relying on the plain language in each statute, the court found that, under the Cable Act, "[t]he award of statutory damages . . . is committed to the Court's discretion," and that, under the Wiretap Act, a court likewise "may, in its discretion, refuse to award any damages." J.A. 73, 67; *see Nalley v. Nalley*, 53 F.3d 649, 650 (4th Cir. 1995) (holding that the Wiretap Act "gives the district court discretion to decline to award damages even though a violation may have occurred."). Though the court recognized that "an award of statutory damages [under the Wiretap Act] may serve the legitimate and useful purpose of deterrence," it found "that this purpose can be met by an award of costs and attorneys' fees" on the particular facts of this case. J.A. 68. The court similarly declined to award statutory damages under the Cable Act, finding injunctive relief, costs, and fees to be "sufficient deterrents." J.A. 74.

On appeal, DIRECTV seeks review only of the district court's refusal to award statutory damages under the Wiretap Act, 18 U.S.C. § 2520(c)(2). Significantly, DIRECTV did not appeal the denial of damages under the Cable Act, 47 U.S.C. § 605(e)(3)(C)(I)-(II), and acknowledged at oral argument that the district court did not abuse its discretion in that regard. We review the district court's denial of statutory damages under the Wiretap Act for abuse of discretion. *See Nalley*, 53 F.3d at 654. A district court abuses its discretion if it fails "adequately to take into account judicially recognized factors constraining its exercise," or if it bases its exercise of discretion on an erroneous factual or legal premise. *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993).

## III.

DIRECTV raises two principal arguments on appeal. First, it argues that the Wiretap Act only grants discretion to a district court to decline to award damages for de minimis violations of the statute. *See* Appellant's Br. at 20 (citing *Nalley*, 53 F.3d at 653). Second, DIRECTV argues that, to the extent the district court did have discretion to decline to award damages, it abused such discretion by relying

on improper considerations and failing to recognize the severity of Rawlins's violation of the statute.

## A.

Analysis of these arguments begins, as it must, with the language of the underlying statutes.[5] The Cable Act prohibits the unauthorized reception of DIRECTV's encrypted signal by end-users, 47 U.S.C. § 605(a), and the manufacture, assembly, modification, importation, exportation, sale, or distribution of devices or equipment used to assist end-users in such unauthorized reception, *id.* § 605(e)(4). In addition to imposing criminal liability, the Cable Act also allows an aggrieved party such as DIRECTV to elect to recover either actual or statutory damages for violations of these provisions. *Id.* § 605(e)(3)(C)(i). For those seeking statutory damages, as DIRECTV did in this case, the Cable Act sets forth a two-tiered penalty system. The relevant portion of the Cable Act provides:

> [T]he party aggrieved *may* recover an award of statutory damages for each violation of [§ 605(a)] involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of [§ 605(e)(4)] involved in the action an aggrieved party *may* recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

*Id.* § 605(e)(3)(C)(i)(II) (emphasis added). In other words, end-users who violate the Cable Act are subject to awards of statutory damages of $1,000 to $10,000 per violation, while manufacturers, programmers, sellers, and others facilitating such conduct face statutory damage awards of $10,000 to $100,000 per violation.[6]

---

[5]Though DIRECTV appeals only the district court's decision with respect to the Wiretap Act, we find it prudent to discuss the Cable Act and Wiretap Act in conjunction here to provide the complete statutory backdrop to the district court's analysis.

[6]This court previously held, in an unpublished opinion, "that § 605(e)(4) does not categorically exempt individual users." *DIRECTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006) (per curiam). We

Such acts of piracy also violate the independent statutory scheme embodied in the Wiretap Act. The Wiretap Act subjects to criminal punishment "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or other electronic communication." 18 U.S.C. § 2511(1)(a). With limited exceptions not applicable here, the Wiretap Act, like the Cable Act, also provides a civil remedy to any party aggrieved by a violation of § 2511. *Id.* § 2520(a). The aggrieved party "may in a civil action recover . . . such relief as may be appropriate," § 2520(a), which includes appropriate declaratory or equitable relief, damages, and reasonable attorney's fees and costs, § 2520(b).

The Wiretap Act's civil damages provision, in turn, is divided into two parts. The first provides that if the violation involved is "the private viewing of a private satellite video communication that is *not* scrambled or encrypted . . . then the court *shall* assess" actual damages or statutory damages in an amount ranging from $50 to $1,000. *Id.* § 2520(c)(1) (emphasis added). The second part provides that,

> [i]n any other action under this section [including those involving *encrypted* communications], the court *may* assess as damages whichever is the greater of—

---

offer no opinion here regarding the issue addressed in *Pernites*—whether § 605(e)(4) might properly be applied to end-users like Rawlins. Many courts have held that § 605(e)(4) targets only upstream manufacturers and distributors and not the ultimate consumers of pirating devices. *See Hoa Huynh*, 503 F.3d at 855 (collecting cases); *DIRECTV, Inc. v. Neznak*, 371 F. Supp. 2d 130, 133 (D. Conn. 2005); *DIRECTV, Inc. v. Albright*, No. Civ.A. 03-4603, 2003 WL 22956416, at *2 (E.D. Pa. Dec. 9, 2003); *DIRECTV, Inc. v. Borich*, No. Civ.A. 1:03-2146, 2004 WL 2359414, at *3 (S.D. W.Va. Sept. 17, 2004). Other courts have taken the view this court found persuasive in *Pernites*. *See DIRECTV, Inc. v. Robson*, 420 F.3d 532, 543-44 (5th Cir. 2005). In this case, DIRECTV brought a claim under § 605(e)(4) and moved for default judgment on the claim. The district court denied the motion, finding that § 605(e)(4) targeted only upstream manufacturers and distributors, citing *Borich* but failing to mention *Pernites*. J.A. 70. DIRECTV did not appeal the denial of this claim, and we will therefore not address it.

> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
>
> (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

*Id.* § 2520(c)(2) (emphasis added). Because it is the interception of DIRECTV's *encrypted* satellite signal that is at issue in this case, § 2520(c)(2) controls the award of statutory damages.

This court has recognized, consistent with the language of the statute and with the views of the majority of our sister circuits, that the award of damages under § 2520(c)(2) is discretionary. *See Nalley*, 53 F.3d at 652-53; *see also DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004); *Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir. 1999); *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996). *But see Rodgers v. Wood*, 910 F.2d 444, 448 (7th Cir. 1990).[7] The proper parameters

---

[7]When a court does award damages under § 2520(c)(2), the statute requires that the award amount to at least $10,000. The Sixth Circuit has provided a helpful description of the workings of the statute, in the form of step-by-step guidance to district courts:

> (1) The court should first determine the amount of actual damages to the plaintiff plus the profits derived by the violator, if any. *See* 18 U.S.C. § 2520(c)(2)(A).
>
> (2) The court should next ascertain the number of days that the statute was violated, and multiply by $100. *See* 18 U.S.C. § 2520(c)(2)(B).
>
> (3) The court should then tentatively award the plaintiff the greater of the above two amounts, unless each is less than $10,000, in which case $10,000 is to be the presumed award. *See id.*
>
> (4) Finally, the court should exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it. *See* 18 U.S.C. § 2520(c)(2).

*Dorris*, 179 F.3d at 430. In no case will a court reach step three and conclude that the tentative award under § 2520(c)(2) is less than $10,000. Therefore, where, as here, a plaintiff seeks the statutory minimum amount of $10,000, the only relevant step from the procedure outlined in *Dorris* is the fourth step: the district court's exercise of "its discretion to determine whether the plaintiff should receive any damages at all." *Id.*

of this discretion form the crux of this appeal, and, therefore, it is to those parameters that we now turn.

### B.

DIRECTV first argues that our precedent in *Nalley* created a bright-line test, making mandatory an award of damages under the Wiretap Act for any violation of the statute that is not de minimis in nature. Rawlins, on the other hand, insists that "*Nalley* stands for the rule that any district cou[rt] *may* decline to award damages in *any* case involving § 2520(c)(2)." Appellee's Br. at 6 (emphasis added).

The facts of *Nalley* provide a useful backdrop to our consideration of its applicability to the present case. In *Nalley*, a woman who received an audiotape containing a telephone conversation between her husband and a paramour played the tape for her children, her attorney, and the paramour's husband. The woman's husband and his lover sued his wife under the Wiretap Act, seeking statutory damages of $10,000 for her intentional disclosure of the contents of their telephone conversation, "knowing or having reason to know that the information was obtained through [an unauthorized] interception." *Nalley*, 53 F.3d at 650 (alteration in original) (quoting 18 U.S.C. § 2511(1)(c)). The wife stipulated to a one-day violation of the Wiretap Act, and the case proceeded to trial on the issue of damages. The district court found the act of intentionally disclosing the contents of the audiotape to be a de minimis violation of the Wiretap Act. Concluding that it had discretion to decline to award damages under the Wiretap Act, the district court awarded none. *Nalley*, 53 F.3d at 650.

Confronting an issue of first impression in the circuit, this court decided that the Wiretap Act "gives the district court discretion to decline to award damages even though a violation may have occurred." *Id.* The *Nalley* decision was grounded in the language of 18 U.S.C. § 2520(c)(2), which states that "the court *may* assess . . . damages," in an appropriate case (emphasis added). The court contrasted the language of § 2520(c)(2) with the mandatory language appearing in § 2520(c)(1) (". . . the court *shall* assess damages . . . .") (emphasis added). The court held, "To give this contrasting language meaning, we must read § 2520(c)(2) to embody a congressional intent to grant courts the discretion to decline to award damages in all but

the particular circumstances covered by § 2520(c)(1), where Congress clearly did not manifest an intent to confer such discretion." *Nalley*, 53 F.3d at 651.

DIRECTV would have us read *Nalley* as limiting the court's discretion to decline to award damages under the Wiretap Act to de minimis violations. Fairly read, however, the language of *Nalley* does not support such a construction. It is not inferable solely from the fact that the violation in that case was found to be de minimis that the court's discretion is circumscribed on that basis. Rather, the opinion cites favorably a number of factors that weigh in the determination of whether an award of damages is appropriate: the severity or minimal nature of the violation; whether there was actual damage to the victim; the extent of any intrusion into the victim's privacy; the relative financial burdens of the parties; whether there was a reasonable purpose for the violation; and whether there was any useful purpose to be served by imposing the statutory damages amount. *Nalley*, 53 F.3d at 654 (citing *Reynolds v. Spears*, 857 F. Supp. 1341, 1348 (W.D. Ark. 1994), *aff'd*, 93 F.3d 436 (8th Cir. 1996)), and *Shaver v. Shaver*, 799 F. Supp. 576, 580 (E.D.N.C. 1992)); *see also Dorris*, 179 F.3d at 430; *DIRECTV, Inc. v. Guzzi*, 308 F. Supp. 2d 788, 790 (E.D. Mich. 2004).[8] The invocation of such a range of criteria to govern the court's exercise of discretion refutes the argument that the existence of more than de minimis harm alone suffices to strip the court of discretion. We therefore cannot agree that *Nalley* precludes the exercise of discretion for non-de-minimis harms.

## C.

In the alternative, DIRECTV argues that, to the extent the district court had discretion under *Nalley* to decline to award damages, it abused that discretion both by giving weight to improper considerations and by failing to adequately consider several *Nalley* factors,

---

[8]While *Nalley* may be read as merely alluding to these non-exclusive factors, we find them to provide a useful framework for exploring the equities at stake in a court's exercise of discretion, and we therefore adopt them here.

including the severity of Rawlins's piracy and the harm it exacted upon DIRECTV.[9] We agree.

The district court analyzed the claim for Wiretap Act damages as follows:

> In exercising [its] discretion [under the Wiretap Act] in the instant case, the Court concludes that damages are not appropriate. Aside from potentially receiving Directv's satellite television programming for free of charge for a period of time, there is no indication that Defendant otherwise profited from his conduct. There is no evidence that he used the devices for commercial purposes or purchased the device for resale. There are no allegations that Defendant induced others to commit similar violations. Although Directv alleges that "[t]he value of the programs that Defendant[ ] [was] *capable of viewing* without authorization may easily reach $100,000 in a single year," there is no allegation as to how long Defendant actually used the devices or the dollar amount Directv would have received in subscription fees but did not obtain as a result of Defendant's activity. There is no evidence of the amount of Defendant's actual personal use of the devices. Therefore, the Court denies Directv's request for statutory damages arising from Defendant's violation of [the Wiretap Act].

J.A. 67-68 (citation omitted) (alteration and emphasis in original).

The flaws in the district court's analysis are manifest. First, the analysis relies on a number of irrelevant factors. The Wiretap Act criminalizes the actions of any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept" electronic communications. 18 U.S.C. § 2511(1)(a). It allows recovery in a civil action brought by any person whose electronic communications are "intercepted, disclosed, or intentionally used." *Id.* § 2520(a); *DIRECTV, Inc. v. Nicholas*, 403 F.3d 223, 228 (4th Cir. 2005). There-

---

[9]Rawlins presents no cogent counterargument, except to repeat that the district court should be granted wide discretion in its awarding of damages under the Wiretap Act.

fore, the fact that Rawlins neither used the devices for commercial purposes nor purchased them for resale is not germane to an analysis of damages related to his patent violation of the statute.

The district court also gives weight to the lack of evidence to show that Rawlins induced others to violate the Wiretap Act. Although such a consideration *might* be relevant if Rawlins were charged with procuring another person to intercept electronic communications under the Wiretap Act, *id.* § 2511(1)(a), it has no apparent bearing on his culpability for *his own* interception.[10]

Furthermore, the district court's reasoning punishes DIRECTV for gaps in evidence that are due solely to Rawlins's default. For example, the district court twice points to the lack of "evidence of the amount of Defendant's actual personal use of the devices." J.A. 67. Such evidence would most easily be produced *in defense* by Rawlins, not as part of DIRECTV's case-in-chief. It is scarcely appropriate, procedurally, to allow Rawlins to benefit from the paucity of evidence attributable to his own default. To the contrary, by providing district courts with the alternative of either actual or statutory damages, the Wiretap Act provides a vehicle for awarding damages that does not stall merely because the defendant has refused to participate in the process.

---

[10]The import of the concurring opinion, seemingly in this regard, is opaque. It first suggests that the Whalen affidavit, which was submitted with "Plaintiff's Supplemental Memorandum of Law in Support of Its Motion for Entry of Default Judgment Against Defendant Rawlins" specifically referred to by the district court in the opening paragraph of its order, J.A. 62, and repeatedly described in Rawlins's brief as having been considered by the court, *see* Appellee's Br. at 6-7, was somehow "inadvertently overlooked." However, the only portion of III.C. with which it apparently takes issue is the characterization of the evidence on which the district court relies—that Rawlins neither used the pirated devices for commercial purposes, nor purchased them for resale—as "irrelevant." The opinion fails to explain how it could be otherwise. The language of the statute at issue criminalizes interception, not commercial use or resale. 18 U.S.C. § 2511. We thus think it clear that our description of that evidence is well-founded, even in the absence of the guidance we provide today.

In that regard, the district court erred not only in what it *did consider*, but in what it *failed to consider* in exercising its discretion. Most troubling is the district court's apparent failure to give much, if any, weight to the affidavit of James F. Whalen, submitted by DIRECTV. Whalen was the Senior Director in DIRECTV's Office of Signal Integrity, which investigated reports of theft of DIRECTV's satellite signal. His affidavit provided significant detail regarding DIRECTV's costs and billing practices, Rawlins's account history, and the particular devices Rawlins utilized. *See* J.A. 25-61. Such evidence, standing uncontroverted by virtue of Rawlins's default, certainly warranted careful consideration. *See James*, 6 F.3d at 239.

The Whalen affidavit is critical to DIRECTV's claim for damages precisely because it is probative of many of the *Nalley* factors that, although never considered by the district court, should govern the exercise of discretion to award damages under the Wiretap Act: the severity of the violation; the degree of harm to the victim; the relative financial burdens of the parties; and the purposes to be served by imposing the statutory damages amount. *See Nalley*, 53 F.3d at 654. The district court's analysis is also troubling because of its failure to adequately weigh any of these considerations. For example, it did not analyze the severity of Rawlins's violation of the Wiretap Act, despite evidence in the Whalen affidavit detailing the extent of Rawlins's piracy. Similarly, the court paid no heed to the significant amounts Rawlins expended for his pirating equipment, surely probative of his ability to pay damages. Nor do we have the benefit of the district court's analysis into whether there would be a useful purpose to be served by awarding the statutory amount in this case, as the court only offered the bald assertion that the purpose of deterrence "can be met by an award of costs and attorneys' fees." J.A. 68.

On the whole, we also find the district court's conclusion to be incongruent with the seriousness of Congress's approach to the interception of *encrypted* signals. *See Nicholas*, 403 F.3d at 227-28. In *Nicholas*, this court held that a provider victimized by a violation of 18 U.S.C. § 2511(1) could bring a civil action against the violator. *Id.* at 228. In so holding, the court noted Congress's intent "that violators who intercept encrypted transmissions, requiring greater technical savvy and efforts, are to face greater punishments than those who take

fewer measures in order to intercept nonencrypted transmissions." *Id.* at 227.

For these reasons, we conclude that the district court abused its discretion in its approach to analyzing whether statutory damages should have been awarded under 18 U.S.C. § 2520(c)(2).

IV.

Having determined that the district court erred in its analysis of DIRECTV's claim for damages under the Wiretap Act, we must remand for a proper consideration of whether such damages should be awarded. The particulars of our mandate, however, warrant elaboration.

At the outset, we highlight the limitations on what remains to be decided in this case. Two facts make the posture of this case unusual —the district court's failure to award *any* damages, and DIRECTV's decision to appeal *only* the Wiretap Act claim. First, as described in detail above, the district court declined to award damages under the Cable Act *and also* declined to award damages under the Wiretap Act. That decision places this case outside the heartland of judgments in the thousands of cases in which DIRECTV has pursued defendants who stole DIRECTV programming through the use of pirate access devices. In many such cases, the defendants, like Rawlins, defaulted. However, those district courts often elected to award statutory damages to DIRECTV under the Cable Act, in amounts ranging from $1,000 to $10,000, and then exercised their discretion under the Wiretap Act to decline to award additional damages for the same conduct.[11]

---

[11]*DIRECTV, Inc. v. Lankester* is emblematic. No. 8:03-CV-1631 (D. Md. May 25, 2005) (memorandum opinion). The court granted default judgment in favor of DIRECTV against fifty-eight individual defendants, finding it just, in each case, to grant the minimum statutory damage award of $1,000 per violation (which that court interpreted as "per device") under the Cable Act. The resulting damages awards, exclusive of attorney's fees and costs, ranged from $1,000 to $6,000. The court then declined to award damages under the Wiretap Act, citing *Nalley* for the proposition that such an award was discretionary. The court commented, "[f]oremost among the court's reasons [for declining to award

Such an exercise of discretion is entirely consistent with *Nalley*. Where a court *reasonably concludes* that the purposes of the Wiretap Act are adequately served by an award of damages under the Cable Act, and that an additional $10,000 award premised on the same conduct would be gratuitous, there is no "useful purpose" to be served by the imposition of additional statutory damages under 18 U.S.C. § 2520(c)(2). *See DIRECTV, Inc. v. Brown*, 371 F.3d 814, 819 (11th Cir. 2004) (upholding, in a case involving a defaulting defendant like Rawlins, a district court's decision not to augment its award of substantial Cable Act damages with any Wiretap Act damages, as any additional award "could easily be viewed as gratuitous"); *cf. Nalley*, 53 F.3d at 654. In such circumstances, because it would serve no useful purpose, a district court does not abuse its discretion, even though faced with more than a de minimis violation, in declining to award damages under the Wiretap Act. *See Brown*, 371 F.3d at 819. Indeed, DIRECTV has acknowledged the propriety of withholding a Wiretap

---

damages under the Wiretap Act] is that DIRECTV will receive judgment[s] against [the defendants] for [ ] violation[s] of the Cable Act . . . , violation[s] premised on the same underlying conduct." *Lankester*, No. 8:03-CV-1631, at 10 (citing *DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1131 (M.D. Ala. 2004)) (internal quotations omitted) (alterations in original). Numerous other district courts in this and other circuits have rendered similar judgments. *See, e.g.*, *DIRECTV Inc. v. Haynes*, No. 5:03-CV-872 (E.D.N.C. 2005) (awarding $1,000 in statutory damages against each of four separate defendants under the Cable Act and nothing under the Wiretap Act); *DIRECTV Inc. v. Yancey*, No. 4:04-CV-11 (W.D. Va. Dec. 12, 2005) (memorandum opinion) (awarding $10,000 statutory damages for violation of 47 U.S.C. § 605(a) and $10,000 for violation of § 605(e)(4), but declining to award further additional damages under the Wiretap Act); *DIRECTV Inc. v. Rodriguez*, No. 03-CV-4590, 2007 WL 1834676, at *2-3 (E.D.N.Y. June 26, 2007) (awarding $2,000 under the Cable Act and nothing under the Wiretap Act); *DIRECTV Inc. v. Kaas*, 294 F. Supp. 2d 1044, 1049 (N.D. Iowa 2003) (finding requested award of $10,000 excessive; awarding $1,000 under the Cable Act and nothing under the Wiretap Act); *DIRECTV Inc. v. Moulder*, No. 2:03-CV-3266 (E.D. Pa. 2005) (awarding $10,000 statutory damages without specifying whether the award arose under the Cable Act or the Wiretap Act); *DIRECTV Inc. v. Quell*, No. 2:03-CV-3274 (E.D. Pa. 2004) (awarding $2,000 statutory damages, also unspecified).

Act award in such a case, noting at oral argument that "DIRECTV has not ever sought to pursue double damages under the two statutes."[12]

It is not possible, however, for us to remand this case for reconsideration of both the Cable Act and Wiretap Act claims for damages because DIRECTV has only appealed the district court's denial of Wiretap Act damages. *See Doe v. Chao*, 511 F.3d 461, 465-66 (4th Cir. 2007) (discussing the mandate rule and noting that the rule prohibits district courts from reconsidering issues the parties failed to raise on appeal). Having made the strategic decision to appeal only the ruling under the Wiretap Act, DIRECTV cannot now escape the consequences of its decision, and the strictures its strategy has placed on the scope of the remand. The district court no longer has the option to award damages under the Cable Act.[13] By the same token, however, Rawlins, by his default, has lost the ability to contest the well-pleaded allegations of the complaint or his guilt under either statute. *See Ryan*, 253 F.3d at 780. At bottom, then, it is solely the question of the appropriateness of statutory damages under the Wiretap Act that we remand for reconsideration by the district court.[14]

---

[12]In line with this assertion, it appears that DIRECTV did not pursue appeals in the vast majority of the cases in which Cable Act damages, but not Wiretap Act damages, were awarded. It may well be, then, that had the district court here awarded some actual or statutory damages, under either Act, DIRECTV would not have pursued this appeal.

[13]It does not follow that the Cable Act is entirely irrelevant on remand. As part of its determination on remand as to whether there is a "useful purpose" to be served by imposing damages under the Wiretap Act, the district court may consider the fact that DIRECTV could have sought relief under the Cable Act on appeal, but chose to forego it as a matter of strategy. We do not suggest a bright-line rule; instead, when a plaintiff selectively pursues damages under certain statutes and not others, the district court may consider on a case-by-case basis whether awarding the particular damages sought might represent a windfall to the plaintiff in light of the damages otherwise available but not sought.

[14]In remanding for reconsideration, we reject DIRECTV's request that we reverse and remand for entry of a statutory damages award of $10,000 pursuant to § 2520(c)(2). Having clarified the proper course of analysis that must govern a district court's exercise of discretion in awarding damages, we find it prudent to allow the district court to reconsider the application of that analysis in the first instance.

The parameters that should guide that reconsideration are not novel. The district court must carefully consider the evidence already presented by DIRECTV in support of its damages claim, including, most notably, the Whalen affidavit. Using this and other evidence before it, the district court should examine the relevant factors that guide its exercise of discretion. In particular, the court should consider the extent of Rawlins's violation of the Wiretap Act, as evidenced by the Whalen affidavit. Moreover, the court should consider the relative financial burdens of the parties, paying close attention to Rawlins's past expenditures on pirating equipment. The court should also determine whether a useful purpose would be served by an award of statutory damages. All of these factors should be considered against the backdrop of the seriousness with which Congress has treated the underlying conduct at issue here. Weighing these factors and evidence in the balance, the district court should carefully exercise its discretion in deciding whether to award DIRECTV statutory damages under the Wiretap Act.

V.

In sum, a district court's discretion to award or not award damages under the Wiretap Act is not restricted to those cases involving de minimis violations. Such discretion is not boundless, however. To the contrary, a district court must carefully evaluate the relevant evidence, heeding the factors invoked in *Nalley* and adopted here today, before exercising its discretion. Because the district court in this case did not do so, we vacate its judgment and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

BLAKE, District Judge, concurring separately:

I concur entirely with all but Section III C of the majority opinion. As to III C, I concur with the need for remand but write separately because my perspective differs somewhat from the majority.

First, I agree that remand is necessary because it does not appear that the district court considered the Whalen affidavit. In its opinion

the court refers only to the value of the potential unauthorized access noted in the complaint ($100,000 in a single year) and states there is "no allegation as to how long defendant actually used the devices or the dollar amount DIRECTV would have received in subscription fees but did not as a result of Defendant's activity." J.A. 67. In fact, the Whalen affidavit asserts that Rawlins was a subscriber from September 4, 2000, to at least October 5, 2005, and shows that he purchased devices between October 2000 and May 2001; it also provides what appears to be a reasonable estimate of the likely annual value ($2,748.96) of the pirated programming. J.A. 25-61. Indeed, in light of this obvious discrepancy it may be that the district judge inadvertently overlooked the affidavit. Remand is warranted for careful consideration of this evidence in light of the factors now explicitly adopted by the majority.

Second, however, as to the factors the district court did consider and rely on, the majority identifies as "irrelevant" the fact that Rawlins neither used the devices for commercial purposes nor purchased them for resale, and the lack of evidence to show that Rawlins induced others to violate the Wiretap Act. As I believe this guidance from the Circuit had never before been made explicit, and would not have been clear from prior case law, I would not fault the district court for having considered those factors in its analysis.

In summary, I agree with the need for remand and appreciate the majority's willingness to permit the district court to exercise its discretion with a full understanding of the factors that should be considered and therefore concur in the result of Section III C as well as joining in the remainder of the majority opinion.